**STATE of Minnesota, Respondent,**

v.

**Audie FOX, Appellant.**

No. C6-82-928.

Supreme Court of Minnesota.

Nov. 23, 1983.

 

C. Paul Jones, Minnesota State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Norman B. Coleman, Jr., Marvin J. Green, Sp. Asst. Attys. Gen., St. Paul, John Dimich, Itasca County Atty., Grand Rapids, for respondent.

PETERSON, Justice.

Defendant, Audie Lynn Fox, was found guilty by a district court jury of the first-degree murder of Deputy Sheriff Robert R. Lawson in violation of Minn.Stat. § 609.-185(4) (1982) (intentional killing of a peace officer engaged in the performance of official duties), and was sentenced to life imprisonment. On this appeal from the judgment of conviction, defendant contends that the trial court erred in not instructing the jury that under the peace officer statute the state must prove that defendant knew that the victim was a "peace officer" and erred in not submitting, as a lesser offense, third-degree murder, Minn.Stat. § 609.195 (1982).

On October 28, 1981, defendant came to Minnesota from his home in Colorado to see his former wife, Pam Fox, and two of their young children, Tommy and Andy. He proceeded to his father's home in Pengilly, Minnesota, and hid in the basement. Without revealing his whereabouts, defendant telephoned his aunt, who lived next door to his father's home, and told her to go and order his father to get the children.

When his father was reluctant to leave at the aunt's suggestion, defendant revealed himself and forced his father at gunpoint to get the children. Defendant's father returned with only Andy. Attempts throughout the rest of the day to lure Pam and Tommy to the home were unsuccessful.

Early the next morning, there were several telephone calls to and from the Fox home. Pam's mother repeatedly spoke with defendant and told him that he would have to call the sheriff's office and that only through Deputy Lawson could he find out where Pam was located. Lawson had been assigned to protect Pam and the children from any violent contact with defendant. Pam became anxious for Andy's safety when defendant was persistent about seeing his children.

Pam's mother called the Itasca County Sheriff's Department and asked for Lawson. However, Lawson had left for the day, and he was off duty. Pam's mother then called Lawson at his home. She told him about her conversation with defendant, and he said, "I think it about time we get Andy out of there." Although Lawson was off duty that morning, he telephoned the chief deputy and received authorization to perform this task.

After speaking with Pam's mother, defendant thought that Deputy Lawson might be coming to get Andy. Defendant had known Lawson since the sixth grade. Defendant told his aunt that Lawson "had been out to get him, he'd taken everything away from him, and he was always trying to pump information from people to try and get things on him." Defendant also said that he would kill Deputy Lawson.

In anticipation of someone coming to get Andy, defendant ordered his aunt to sit at the kitchen table with Andy on her lap while he hid himself behind a partition in the living room. Lawson, dressed in plain clothes and carrying his service revolver, arrived at the Fox home in a police squad car a little before 10:30 a.m. When Lawson entered through the kitchen door, he greeted Andy. Lawson then announced that he had come to take Andy to his mother.

Defendant entered the kitchen and pointed a .357 caliber revolver at Lawson. He twice ordered Lawson to lie down on the floor. Lawson refused, and only when defendant cocked the revolver did Lawson lie on the floor. Defendant demanded that Lawson tell him Pam's telephone number.

Lawson said that he did not have Pam's number and that defendant would have to call the sheriff's department to reach her. Defendant told Lawson that he had lost everything he ever had, that Lawson had taken it away from him, and that now Lawson was trying to come and take his child. After defendant's aunt took Lawson's service revolver, as defendant had ordered, she carried Andy behind the refrigerator and covered his ears, because she was afraid that defendant was going to shoot Lawson.

Defendant then stated that he would count to three and that if Lawson did not give him Pam's telephone number he would shoot him. When Lawson failed to give defendant Pam's number, defendant counted to three and shot Deputy Lawson in the head. Shortly after the shooting, defendant ordered his aunt from the home, and the police were contacted. A standoff ensued, lasting until defendant was arrested early the next morning.

Defendant was indicted by the grand jury on two counts of first-degree murder. At the close of defendant's jury trial, the jury was instructed on two counts of first-degree murder and the lesser offense of second-degree murder. Defendant's request that third-degree murder be submitted to the jury was denied. The jury returned a verdict finding defendant guilty of intentional murder of a peace officer in violation of Minn.Stat. § 609.185(4) (1982).

1. Minn.Stat. § 609.185 (1982) states, in pertinent part:

Whoever does any of the following is guilty of murder in the first degree and shall be sentenced to imprisonment for life:

*　　*　　*　　*　　*　　*

(4) Causes the death of a peace officer or a guard employed at a Minnesota state correctional facility, with intent to effect the death of that person or another, while the peace officer or guard is engaged in the performance of his official duties.

■ Defendant contends that the statute requires a finding that the defendant not

only intended to cause the death of a person but that he must know that the victim is a peace officer and that the trial court should have so instructed the jury.[1] We do not reach this issue, because defendant failed to properly raise it by objecting in the trial court and has therefore forfeited his opportunity to challenge the instruction on appeal. *See State v. Malaski,* 330 N.W.2d 447, 451 (Minn.1983); *State v. Boggess,* 312 Minn. 598, 253 N.W.2d 146, 147 (1977).

The contention in any event is patently without merit under the facts of this case, where it is so clear that defendant knew that his victim was a peace officer. Defendant had known Lawson since they were in grade school. Further, defendant told his aunt that he thought Lawson would be coming to get Andy and that he would kill Lawson. The facts show that when Lawson went to the Fox home he was engaged in the performance of his official duties. Although dressed in plain clothes, Lawson arrived in his police squad car, and he had his police revolver strapped about his waist. It is plainly evident that when defendant shot Lawson he did in fact intend to kill a peace officer who was engaged in the performance of his official duties. Thus, we hold that defendant has no basis for attacking the peace officer jury instruction.

2. Defendant's second contention is that the trial court should have submitted to the jury the lesser offense of third-degree murder, Minn.Stat. § 609.195 (1982), which provides:

> Whoever, without intent to effect the death of any person, causes the death of another by perpetrating an act eminently dangerous to others and evincing a depraved mind, without regard for human life, is guilty of murder in the third degree and may be sentenced to imprisonment for not more than 25 years.

The trial court refused to charge the jury regarding the third-degree murder statute after determining that defendant intended to shoot only the particular victim who was shot.

The rule on submitting instructions on a lesser degree of homicide is clear. "The trial court should submit instructions on a lesser degree of homicide to the jury if the evidence reasonably supports a conviction of the lesser degree and at the same time supports a finding of not guilty of the greater offense." *State v. Carlson,* 328 N.W.2d 690, 694 (Minn.1982).

Defendant's contention that the evidence supports a conviction of third-degree murder is without merit. The facts in the instant case support the trial court's refusal to submit a third-degree murder instruction. All of defendant's acts were directed against Lawson. Defendant knew he was shooting Lawson when he fired one shot into the back of Lawson's head. No other bullets were fired at the scene. There were only two others in the room at the time of the shooting—defendant's aunt and son. Both of them went behind the refrigerator when defendant shot Lawson. Defendant's aunt testified that she took Andy behind the refrigerator and covered his ears, because she did not want him to see or hear the shooting. There was no testimony that she was afraid for her own life.

A depraved mind instruction would therefore have been inappropriate, since the depraved mind statute "was intended to cover cases where the reckless or wanton acts of the accused were committed without special regard to their effect on any particular person or persons; the act must be committed without a special design upon the particular person or persons with whose murder the accused is charged." *State v. Carlson,* 328 N.W.2d at 694 (citation omitted).

Affirmed.

---

1. The jury instruction, as read from CRIMJIG 11.07.4, required that the jury find that defendant intended to kill Lawson and that Lawson was a peace officer who was engaged in the performance of his official duties. It did not require that defendant must have known or reasonably should have known that the victim he intended to kill was a peace officer.