STATE of Minnesota, Respondent,

v.

Victor ANGULO, Appellant.

No. C3–90–1368.

Court of Appeals of Minnesota.

June 4, 1991.

Review Denied Aug. 2, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Gary S. McGlennen, Asst. County Atty., Minneapolis, for respondent.

John M. Stuart, State Public Defender, Marie L. Wolf, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by KLAPHAKE, P.J., and FORSBERG and NORTON, JJ.

## OPINION

KLAPHAKE, Judge.

Victor Angulo appeals from the judgment of conviction, challenging: (1) jury instructions on the elements of attempted first-degree murder of a police officer,

Minn.Stat. §§ 609.17 (1988); 609.185(4) (Supp.1989); (2) the trial court's refusal to instruct the jury on lesser included offenses; (3) jury instructions on self-defense; (4) comments of the prosecutor as prosecutorial misconduct; and (5) an upward durational departure in sentencing. We affirm.

## FACTS

On the afternoon of November 13, 1989, sheriff's officials executed a search warrant at the home of appellant, Victor Angulo. The officers believed Angulo stored large amounts of marijuana at his home and might also have illegal weapons. Before entering Angulo's house, Deputy David Lind identified himself as a police officer. As Lind entered the house shielding himself with a protective bunker, Angulo shot him in the right hand. Two deputies found Angulo lying face down on the living room floor with his gun pushed away from his hand. They arrested Angulo and as a result of the search and arrest found 14 bags of marijuana, two shotguns, and $10,468.41 in cash.

A jury convicted Angulo, *inter alia*, of attempted first-degree murder of a peace officer. The trial court sentenced him to a 240 month executed term, a 40 month upward durational departure from the presumptive sentence. Angulo appeals from the judgment of conviction.

## ISSUES

1. Does Minn.Stat. § 609.185(4) (Supp. 1989) require as an element of first-degree murder that the defendant know the victim was a police officer?

2. Did the trial court abuse its discretion in refusing to instruct the jury on lesser included offenses?

3. Did the trial court err in instructing the jury on self-defense?

4. Does the evidence support the verdict?

5. Did the prosecutor commit prosecutorial misconduct requiring a new trial?

6. Did the trial court abuse its discretion in durationally departing from the presumptive sentence?

## ANALYSIS

### I.

■ Angulo argues the trial court should have instructed the jury that the state must prove he knew or should have known Lind was a peace officer. Minn. Stat. § 609.185(4) (Supp.1989) states a person is guilty of first degree murder if he or she

causes the death of a peace officer * * * with intent to effect the death of that person *or another*, while the peace officer * * * is engaged in the performance of official duties.

(Emphasis added).

Minnesota appellate courts have not addressed the issue of whether Minn.Stat. § 609.185(4) requires the defendant to know the peace officer's identity. *See State v. Fox*, 340 N.W.2d 332, 335 (Minn. 1983) (defendant did not preserve issue for appeal). Unlike similar statutes from other jurisdictions, Minn.Stat. § 609.185(4) does not specifically state that the defendant must know or should have known the victim was a peace officer. *See, e.g.,* N.Y.Penal Law § 125.27(1)(a)(ii) (McKinney 1991); Idaho Code § 18–4003(b) (1990). Nor does it, by its language, imply that such knowledge is a necessary element of the offense. *Cf.* Iowa Code Ann. § 707.2(4) (West 1991) (first-degree murder if "the person intentionally kills a peace officer"). Rather, the Minnesota statute states a defendant who kills a peace officer with intent to kill a person, who, it turns out, is a peace officer performing official duties, is guilty of first-degree murder. Minn.Stat. § 609.185(4). Quite simply, that the victim turns out to be a peace officer acting in an official capacity is the risk one takes when acting with intent to kill. The legislature had the option of including "knowledge" as an element of the crime. It chose not to do so, and we decline to read such an element into the statute. *See* Minn.Stat. § 645.16 (1990) (courts must construe statutes according to the plain language).

■ Contrary to Angulo's assertion, the absence of a "knowledge" element does not make the statute a strict liability offense. *See State v. White*, 464 N.W.2d 585, 587 (Minn.App.1990) (strict liability offense lacks scienter element), *pet. for rev. denied* (Minn. March 15, 1991). Lack of knowledge of a peace officer's identity does not change the fact that intent to kill must be shown.

■ In addition, our supreme court has stated that the statute was most probably enacted to deter the killing of and to protect peace officers, "who are highly vulnerable when engaged in the performance of their duties." *State v. Brown*, 345 N.W.2d 233, 239 (Minn.1984). Angulo contends this policy is not served when the statute is applied to those who kill a peace officer without knowing the victim is a peace officer. Angulo reasons it is impossible to deter the killing of peace officers if the defendant does not know the victim is a peace officer. We disagree. Under our reading of the statute, a defendant who fires a gun intending to kill is put on notice that if a peace officer engaged in official duties is killed, whether or not the defendant knew the officer's identity, the defendant will be charged under Minn.Stat. § 609.185(4). We believe this notice adequately implements the statute's policy of protecting and deterring the killing of peace officers.

## II.

The trial court refused to instruct the jury on attempted second-degree murder, first-degree assault, and second-degree assault as lesser included offenses of attempted first-degree murder of a peace officer. The trial court has discretion to instruct the jury on lesser included offenses, "but where the evidence warrants an instruction, the trial court must give it." *Bellcourt v. State*, 390 N.W.2d 269, 273 (Minn.1986).

■ Neither first nor second-degree assault are lesser included offenses of attempted first-degree murder, because one may commit attempted first-degree murder without using a dangerous weapon or causing great bodily harm. *See State v. Whisonant*, 331 N.W.2d 766, 769 (Minn.1983). Thus, we only examine whether the trial court erred in refusing to instruct the jury on attempted second-degree murder. *See State v. Leinweber*, 303 Minn. 414, 421, 228 N.W.2d 120, 125 (1975) (first-degree murder includes every lesser degree of homicide as an included offense).

■ The trial court should instruct the jury on a lesser included offense if the "evidence provides a rational basis for an acquittal on the offense charged and a conviction on the lesser offense." *Bellcourt*, 390 N.W.2d at 273 (citation omitted). Proof of the elements of the crimes must be sufficiently different to allow the jury to make this distinction. *State v. Adams*, 295 N.W.2d 527, 532 (Minn.1980).

■ The elements of first-degree murder of a peace officer are: (1) the defendant causes the death of a peace officer; (2) the defendant intends to kill the peace officer or another; and (3) the peace officer is engaged in official duties. Minn.Stat. § 609.185(4). The elements of second-degree murder are: (1) the defendant causes the death of a person; and (2) the defendant intends to kill that person or another. *Id.* at § 609.19(1) (1988). The first degree element requiring the victim to be a peace officer engaged in official duties distinguishes it from the second degree offense.

The evidence in this case does not allow a distinction between the attempted first-degree murder charge and an attempted second-degree murder charge, however. Here, Angulo did not dispute that Lind was a peace officer engaged in official duties when Angulo shot him. Under these facts, the jury could not acquit Angulo of attempted first-degree murder and convict him of attempted second-degree murder because the distinguishing elements were not in dispute. We conclude the trial court properly refused to instruct the jury on lesser included offenses.

## III.

■ Angulo also argues the trial court gave the wrong self-defense instruction be-

cause the instruction given could easily have confused the jury regarding the intent element. We disagree.

The trial court based its instruction on CRIM.JIG 7.05 (Self Defense–Causing Death) rather than CRIM.JIG 7.06 (Self Defense–Death not the Result). While Minnesota courts have stated that CRIM. JIG 7.06 is the appropriate instruction where self-defense is asserted in unintentional homicide cases, the language "election to defend" rather than "election to kill" reduces the possibility that jurors would misconstrue the intent element. *Compare State v. Malaski*, 330 N.W.2d 447, 453 (Minn.1983) (holding defective trial court's instruction that defendant's "election to kill" must have been reasonable rather than appropriate instruction that defendant's "election to defend himself in the way he did" must have been reasonable); *with State v. Fidel*, 451 N.W.2d 350, 356 (Minn.App.1990) (trial court's use of CRIM. JIG 7.05 not prejudicial where it instructed jury to consider whether defendant "defended himself as he did" believing it was necessary to prevent his own death), *pet. for rev. denied* (Minn. April 13, 1990).

Here, the trial court directed the jury to consider whether Angulo's "election to defend himself" was reasonable. The trial court also instructed the jury that the state carried the burden of proving beyond a reasonable doubt that Angulo did not act in self-defense. Indeed, the trial court tailored the instruction to fit the facts of this case. We hold that Angulo was not prejudiced as a result of this instruction.

### IV.

■ Angulo contends the evidence is insufficient to support his conviction for attempted first-degree murder of a peace officer. We review a challenge to the sufficiency of the evidence in the light most favorable to the verdict, determining whether a jury could reasonably conclude from the evidence that the defendant was guilty of the offense charged. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). Angulo is guilty of attempted first-degree murder of a peace officer if he took a

substantial step, more than mere preparation, toward committing the crime with intent to commit the crime. *See* Minn.Stat. § 609.17, subd. 1 (1988). The state has the burden to prove beyond a reasonable doubt that Angulo's actions were not justified. *See State v. Austin*, 332 N.W.2d 21, 23 (Minn.1983).

■ Angulo testified he did not hear the police identify themselves. Another witness testified that before this incident, two men looking for a "Victor" at Angulo's prior address had shot a man in the head, intending to shoot Angulo. Angulo testified he heard whispering and a pistol being cocked outside the door, and believed someone was trying to kill him. Angulo stated that the whispering scared him and that he shot his gun without looking—then realized the intruders were peace officers. An upstairs neighbor also testified she did not hear any police announcement before the gunshots.

Several deputies present at the scene testified that Lind shouted loudly "police—search warrant" before entering the house. Witnesses also testified the door was ajar before Lind entered. As factfinder, the jury resolves conflicts in evidence and judges witness credibility. *See Merrill*, 274 N.W.2d at 111. The evidence here supports the jury's conclusion that Angulo's actions were not justified, but rather that he fired the gun with intent to kill.

### V.

■ Angulo contends the prosecutor's actions throughout the trial constituted reversible misconduct. Where the prosecutorial misconduct is not "unusually serious," this court determines "whether the prosecutor erred and, if so, whether [that] misconduct played a substantial part in influencing the jury to convict." *State v. Spaulding*, 296 N.W.2d 870, 876 (Minn. 1980) (citation omitted). In assessing the alleged misconduct, we note that defense counsel's failure to object or request curative instructions weighs against reversal. *State v. Brown*, 348 N.W.2d 743, 747 (Minn.1984).

■ The prosecutor improperly elicited the personal reactions of the police officers involved, as well as those of their families, to the shooting of a fellow officer. This information had nothing to do with the facts of the case and were therefore improper. The prosecutor's references to inadmissible evidence were also improper. *See State v. White*, 295 Minn. 217, 223, 203 N.W.2d 852, 857 (1973). During the prosecutor's closing argument, he improperly compared Angulo to Manuel Noriega, and expressed personal opinions about the weakness of Angulo's case. *See Spaulding*, 296 N.W.2d at 876 (improper to introduce issues broader than defendant's guilt or innocence). In addition, the closing argument carried "law and order" overtones which went beyond the proper scope of closing argument. *See State v. DeWald*, 463 N.W.2d 741, 745 (Minn.1990) (proper closing argument should focus on evidence admitted and reasonable inferences and not be calculated to inflame passions of jury or prejudice jury against defendant). Defense counsel, however, did not object to any of these errors at trial. Given the overwhelming evidence of Angulo's guilt, we conclude the prosecutor's misconduct did not unduly influence the jury to convict.

### VI.

■ The trial court sentenced Angulo to a 240 month executed term, a 40 month upward durational departure. Angulo contends no substantial and compelling circumstances warranted this departure. The trial court has broad discretion in departing from a presumptive sentence where aggravating circumstances are present. *State v. Best*, 449 N.W.2d 426, 427 (Minn.1989). We rely on our "collective, collegial experience in reviewing a large number of criminal appeals" to determine whether a departure is justified. *State v. Norton*, 328 N.W.2d 142, 146 (Minn.1982).

The trial court departed because it found the attempted murder during the execution of a search warrant for controlled substances and weapons was a substantial and compelling circumstance. Relying on Minn.Sent. Guidelines II.D.2.b.(5), the trial court stated the evidence showed Angulo held a high position in a drug distribution hierarchy, and that Angulo's drug trafficking was a sophisticated operation. Angulo admitted to selling drugs, and evidence obtained at the scene included over five pounds of marijuana, $10,000 in cash, a sawed off shotgun, and a scale used to measure the drugs. This evidence supports the trial court's conclusion that Angulo engaged in sophisticated drug dealing. In addition, the record is clear that in resisting the officers Angulo knowingly used firearms, which is also an aggravating factor. *See* Minn.Sent. Guidelines II.D.2.b.(5)(d).

While the sentence was not pronounced for a controlled substance offense, the attempted murder did arise out of the investigation of suspected controlled substance offenses, and therefore falls within guidelines provision II.D.2.b.(5) as an offense "related to trafficking in controlled substances." Based on the record, we cannot say that the trial court abused its discretion in departing from the presumptive sentence.

### DECISION

Affirmed.