**STATE of Minnesota, Appellant,**

v.

**Mohammad G. AL–NASEER, Respondent.**

**No. A05–1394.**

Supreme Court of Minnesota.

July 12, 2007.

Lori Swanson, Attorney General, and Kelly O'Neill Moller, Assistant Attorney General, Saint Paul, MN, Brian J. Melton, Clay County Attorney, Moorehead, MN, for Respondent.

John M. Stuart, State Public Defender, and Theodora Gaitas, Assistant State Public Defender, Office of the Public Defender, Minneapolis, MN, for Appellant.

## OPINION

HANSON, Justice.

The issue before us involves the mens rea element of the crime of criminal vehicular homicide for leaving the scene of an accident that caused the death of a human being. The district court found respondent Mohammad G. Al–Naseer guilty of the crime based on the finding that Al–Naseer knew that he had been involved in an accident. The court of appeals reversed, holding that the mens rea element required that the state prove beyond a reasonable doubt that the driver "knew or had reason to know that the accident caused bodily injury to or death of a person." *State v. Al–Naseer,* 721 N.W.2d 623, 627 (Minn.App.2006) (*Al–Naseer III*). We

adopt a mens rea standard that requires the state to prove beyond a reasonable doubt that Al–Naseer had knowledge that he had been involved in the type of accident that would impose a duty to stop, an accident with a person or another vehicle. Accordingly, we affirm the reversal of Al–Naseer's conviction but remand to the district court for reconsideration of the verdict and for amended findings based on this mens rea standard.

In June 2002, a car driven by Al–Naseer struck and killed a person who was changing a tire along the side of Highway 10 near Glyndon, Minnesota. As a result of the victim's death, Al–Naseer was charged with two counts of criminal vehicular homicide: (1) gross negligence under Minn. Stat. § 609.21, subd. 1(1) (2006) ("gross negligence"); and (2) leaving the scene of an accident under Minn.Stat. § 609.21, subd. 1(7) (2006) ("leaving-the-scene").[1]

At his first trial, Al–Naseer was convicted of both counts. The court of appeals affirmed the gross negligence conviction but reversed the leaving-the-scene conviction, concluding that "[t]he legislature has not clearly indicated its intent to dispense with a *mens rea* requirement, and the district court should have implied a knowledge requirement as a matter of law." *State v. Al–Naseer*, 678 N.W.2d 679, 696 (Minn.App.2004) ("*Al–Naseer I*"). The court of appeals remanded the leaving-the-scene charge for a new trial, but did not specify the precise legal standard to be applied to determine mens rea. The state did not seek review of the reversal of the leaving-the-scene conviction.

We granted Al–Naseer's petition for review of the gross negligence conviction to address whether the district court erred in refusing to instruct the jury on the lesser-

included offense of careless driving. *State v. Al–Naseer*, 690 N.W.2d 744, 747–48 (Minn.2005) ("*Al–Naseer II*"). We reversed the gross negligence conviction and remanded for a new trial, holding that "the jury, as fact finder, was not given a jury instruction on the lesser-included offense of careless driving and therefore was not in a position to weigh whether Al–Naseer's conduct constituted gross negligence or ordinary negligence." *Id.* at 753.

On remand, Al–Naseer waived his right to a jury trial. The physical evidence and testimony at the second trial revealed the following facts. A friend of the victim, who was helping the victim change a flat tire at the time of the accident, testified that the back of the victim's vehicle was well lit with three visible lights—two red flashing emergency lights and one constant white light from the trunk of the car; at the time of the impact, he heard a loud thud and then he saw the victim rolling in front of his car; and after the impact he saw Al–Naseer's car continue driving and pull back from the shoulder of the road gradually onto the right lane of traffic with no "abrupt swerve."

Trooper Randall Harms, a certified accident reconstructionist, testified that the victim's vehicle was parked with flashers illuminated; there was a gouge and smudge on the roadway created by Al–Naseer's vehicle running over the spare tire, showing that "a great amount of force was applied"; at the point of impact the victim was thrown between the two cars, causing a dent to the hood of Al–Naseer's vehicle; Al–Naseer would have heard the impact because it created a loud noise; Al–Naseer would have felt a jolt; the impact sent debris from Al–Naseer's car sliding

---

1. The parties cite to the 2000 version of this statute, but neither subdivision 1(1) nor subdivision 1(7) have been amended since the accident at issue in this case, and thus we will refer to the 2006 version of section 609.21.

down the road; when Al–Naseer's car was stopped after the accident, one of the tires was flat, thus his vehicle would likely pull to one side; after the impact Al–Naseer had to steer his vehicle to get the vehicle back onto the highway; and when Al–Naseer's car was stopped after the accident, Al–Naseer's headlights were not working.

Al–Naseer did not testify at trial. Dilworth police officer Jonathan Froemke testified that he pulled over Al–Naseer's vehicle after he observed Al–Naseer's vehicle traveling without any headlights. Officer Froemke testified that Al–Naseer was equivocal about whether he had hit something. Clay County Sheriff's Deputy Bruce Fleury, who joined Officer Froemke and Al–Naseer, testified that Al–Naseer stated, "Yes, I hit something just a few miles back," but Al–Naseer would not clarify or expand on that admission except to say that he did not know what he had hit.

The district court found Al–Naseer not guilty of the gross negligence charge but guilty of the careless driving and leaving-the-scene charges. As to the mens rea element of the leaving-the-scene charge, the court found beyond a reasonable doubt that Al–Naseer "was aware and/or conscious that he had been involved in a motor vehicle accident and consciously and intentionally left the scene of the accident."

Although the district court's general verdict did not discuss the precise legal standard applied for determining mens rea, the court stated on the record, when announcing its verdict at the conclusion of trial, as follows:

The [c]ourt interprets this statute that when a person dies as a result of an accident, it is not necessary for the defendant to actually know that he *struck a person* and killed him, but that it is only necessary for the defendant to

know that he was involved in a motor vehicle collision. And the great damage to the vehicle and other circumstances I have just stated indicate to the [c]ourt that the [s]tate has proven beyond a reasonable doubt that [Al–Naseer] was *aware that he was involved in an accident.*

(Emphasis added.)

The court of appeals reversed the leaving-the-scene conviction, concluding that the district court incorrectly determined that the mens rea standard only required that the driver knew that he hit "something." *Al–Naseer III*, 721 N.W.2d at 626. The court of appeals concluded that the mens rea standard requires that "the driver knew or had reason to know that the accident caused bodily injury to or death of a person." *Id.* at 627.

The statute under which Al–Naseer was charged is Minn.Stat. § 609.21, subd. 1(7), which provides:

A person is guilty of criminal vehicular homicide resulting in death and may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both, if the person causes the death of a human being not constituting murder or manslaughter as a result of operating a motor vehicle:

\* \* \* \*

(7) where the driver who causes the accident leaves the scene of the accident in violation of section 169.09, subdivision 1 or 6.

Minnesota Statutes § 169.09, subds. 1 and 6 (2000), referred to in section 609.21, subdivision 1(7), provides:

The driver of any vehicle involved in an accident resulting in immediately demonstrable bodily injury to or death of any person shall immediately stop the vehicle at the scene of the accident, or as

close to the scene as possible, but shall then return to and in every event, shall remain at, the scene of the accident until the driver has fulfilled the requirements of this chapter as to the giving of information. The stop shall be made without unnecessarily obstructing traffic.

\* \* \* \*

The driver of a vehicle involved in an accident resulting in bodily injury to or death of any person shall, after compliance with the provisions of this section, by the quickest means of communication, give notice of the accident to the local police department, if the accident occurs within a municipality, or to a state patrol officer if the accident occurs on a trunk highway, or to the office of the sheriff of the county.

As can be seen, the statutes are silent about the mens rea element, which requires us to determine what degree of knowledge is required for this crime.

## I.

We will first address two procedural concerns that could limit our review: (1) the failure of the state to seek review of *Al–Naseer I* and (2) the failure of Al–Naseer to argue for a more specific mens rea standard at the second trial.

As to the first concern, in *Al–Naseer I,* the court of appeals held that the leaving-the-scene statute did not provide for strict liability because the legislature did not clearly indicate an intent to dispense with a mens rea element. 678 N.W.2d at 696. The court of appeals concluded that a mens rea element was implied. *See id.* The state did not seek further review of that holding and the second trial was conducted on the assumption that there was a mens rea element. The state argues, in its brief to this court, that the statute could be read to impose strict liability. Ordinarily, that argument would be precluded

by the law of the case doctrine. *See Sigurdson v. Isanti County,* 448 N.W.2d 62, 66 (Minn.1989) ("Law of the case applies when the appellate court has ruled on a legal issue and remanded for further proceedings on other matters. The issue decided becomes 'law of the case' and may not be relitigated in the trial court or reexamined in a second appeal.").

As to the second concern, at the second trial Al–Naseer's counsel appeared to accept a mens rea standard that only required proof that Al–Naseer knew he had been involved in an accident. In his opening statement he said that Al–Naseer could not be found guilty of leaving-the-scene "unless the state proves that Mr. Al–Naseer left with knowledge that the accident had occurred." In his closing argument he said that the court must decide whether Al–Naseer knew that "he had an accident." Al–Naseer's counsel did not argue that the state must also prove either that Al–Naseer knew that the accident involved a "person" or that Al–Naseer knew that the accident involved "bodily injury to or death of a person." Ordinarily, these two arguments would be precluded because they were not made in the district court. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (stating that this court generally considers only those issues that were presented and considered by the district court).

The strict enforcement of these two procedural bars would severely restrict our ability to interpret the relevant statutes, and thus make any interpretation of questionable application to future cases. Accordingly, we exercise our discretion to consider all arguments concerning the mens rea standard for the leaving-the-scene statute.

## II.

 Statutory interpretation is a question of law that we review de novo.

*State v. Loge,* 608 N.W.2d 152, 155 (Minn. 2000). If the language of the statute is clear and free of all ambiguity we will apply the plain meaning. *Id.* If the meaning is not plain, but is ambiguous, we may ascertain the intention of the legislature by considering: (1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretation of the statute. Minn.Stat. § 645.16 (2006). In addition, we rely on certain presumptions, such as that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; the legislature intends the entire statute to be effective; and the legislature intends to favor the public interest against any private interest. Minn.Stat. § 645.17(1), (2), and (5) (2006).

The district court, court of appeals, and the parties each advance a different mens rea standard. From the most general to the most specific, they are: (1) the state supports, but does not primarily advocate for, a "strict liability" standard—that the driver simply failed to stop at the scene of an accident; (2) the district court applied an "accident" standard—that the driver knew that he was in an accident; (3) the state advocates for the "person or vehicle" standard—that the driver knew that he was in the type of an accident that would impose a duty to stop, meaning an accident involving a person or another vehicle; (4) Al–Naseer advocates for the "person" standard—that the driver knew that he was in an accident and that the accident involved another person; and (5) the court of appeals applied the "bodily injury or death" standard—that the driver knew that he was in an accident, that the acci-

dent involved a person, and that the person sustained bodily injury or death.

There is a split of authority among other jurisdictions on the degree of knowledge required under leaving-the-scene statutes that are silent about the mens rea element.

In many jurisdictions, the statutes defining the offense of hit-and-run do not contain the express requirement of knowledge by the motorist of the accident, injury, or damage. In such jurisdictions, some courts have taken the view that proof of the defendant's knowledge of the occurrence of the collision only was required, and it need not also be shown that the defendant knew of any resulting injury or damage. However, a number of courts have held that * * * proof of the defendant's knowledge of both the collision and the resultant injury or damage was required.

In a few jurisdictions, courts have held * * * that * * * such proof [of a collision, injury, or damage] was not required in a prosecution under the statute, essentially making the offense one of strict liability, although noting that a showing of a lack of knowledge may be a valid defense.

Marjorie A. Caner, Annotation, *Necessity And Sufficiency of Showing, In Criminal Prosecution Under "Hit–And–Run" Statute, Accused's Knowledge of Accident, Injury, or Damage,* 26 A.L.R.5th 1, 22–23 (1995) (internal cross-references omitted).

At least one state has held that strict liability applies where the statute is silent about mens rea in a leaving-the-scene statute. *See People v. Manzo,* 144 P.3d 551, 559 (Colo.2006). The Colorado Supreme Court concluded that the driver's failure to perform his duty to stop at the scene, render aid, and fulfill other statutory requirements satisfied the mens rea standard because it constituted an omission to

perform an act that the driver was capable of performing. *Id.* at 555.

Some courts have determined that the mens rea standard only requires that the driver know that an accident has occurred. *See, e.g., Dettloff v. State,* 120 Nev. 588, 97 P.3d 586, 590 (2004) (noting the additional requirement of proof that the driver have knowledge that the accident caused bodily harm would defeat the public interest and encourage drivers to hastily retreat in order to avoid gaining knowledge that someone was injured); *State v. Vela,* 100 Wash.2d 636, 673 P.2d 185, 188 (1983) (concluding that any requirement of additional knowledge "would tend to defeat the public interest which is served by requiring persons involved in vehicle collisions to stop and provide identification * * * and to be available to render assistance if required"); *State v. Wall,* 206 Kan. 760, 482 P.2d 41, 45 (1971) (noting that only requiring knowledge that an accident has occurred is consistent with the humanitarian purpose of the statute).

One court determined that the mens rea standard requires proof of knowledge that there was an accident and that the accident involved a "person." *See People v. Digirolamo,* 179 Ill.2d 24, 227 Ill.Dec. 779, 688 N.E.2d 116, 124 (1997). The Illinois Supreme Court said that the requirement that the state prove knowledge that the accident involved a person "best effectuates the legislative intent" because "the only reason for this substantial increase in the penalty * * * is because a *person,* as opposed to a piece of property, has been injured." *Id.* (emphasis in original).

Other courts have held that the mens rea standard requires proof of knowledge that there was an accident, that the accident involved a person, and that the person was injured. In *People v. Holford,* the California Supreme Court concluded that the appropriate mens rea standard is one

that attaches criminal liability to "a driver who knowingly leaves the scene of an accident if he actually knew of the injury or if he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person." 63 Cal.2d 74, 45 Cal.Rptr. 167, 403 P.2d 423, 427 (1965). *See also, e.g., State v. Dumas,* 700 So.2d 1223, 1225–26 (Fla.1997) (requiring knowledge of an injury but not of death); *Micinski v. State,* 487 N.E.2d 150, 152–53 (Ind.1986) (requiring knowledge of an injury); *State v. Sidway,* 139 Vt. 480, 431 A.2d 1237, 1240 (1981) (requiring constructive knowledge of an injury: "It is not necessary to show, by direct or circumstantial evidence, that the defendant had actual knowledge of any resultant injury or damage. If an impact occurs under such circumstances that a reasonable person would anticipate injury to person or property, knowledge of that fact is imputed to the driver.").

*The "Strict Liability" Standard*

■ In its brief to this court, the state suggests that we could conclude that criminal vehicular homicide for leaving-the-scene is a strict liability crime, but at oral argument the state conceded that the statute required some level of knowledge and was therefore not a strict liability crime. We agree that both section 169.09, subdivisions 1 and 6, and section 609.21, subdivision 1(7), require some level of knowledge and are not strict liability statutes.

■ We have said that strict liability offenses are disfavored. *State v. Arkell,* 672 N.W.2d 564, 567 (Minn.2003). And the rule of lenity requires that we construe a statute against strict criminal liability. *See id.* This is particularly true for traffic offenses. In *City of Minneapolis v. Altimus,* we said:

While general traffic offenses do not require that the wrongdoer specifically

intend to commit the crime for which he is charged, we have held that before criminal liability can attach it is essential that the defendant intentionally or negligently do the act which constitutes the crime.

306 Minn. 462, 466, 238 N.W.2d, 851, 855 (1976).

Here, the act of continuing to drive (or failing to stop) is not criminal in itself, but only becomes criminal if the driver has caused an accident that is of the type that imposes a legal obligation to stop. In order for a person to be criminally liable for failing to stop, basic fairness requires that the person be on notice that events that trigger the legal duty to stop have occurred.

This conclusion is consistent with the distinctions we made in our decisions in *State v. Benniefield*, 678 N.W.2d 42 (Minn. 2004), and *In re C.R.M.*, 611 N.W.2d 802 (Minn.2000). In *Benniefield*, we held that knowledge that a defendant was in a school zone was not required because the underlying act of possession of illegal drugs was already a crime. 678 N.W.2d at 48–49. But, in *In re C.R.M.*, we held that knowledge that the defendant possessed a knife on school property was required because possession of a knife was not a crime in all circumstances. 611 N.W.2d at 810. Similarly, because failure to stop is not a crime in all circumstances, knowledge that an event has occurred that triggered the duty to stop is required.

*The "Bodily Injury to or Death of any Person" Standard*

To the other extreme, the court of appeals construed subdivision 1 of section 169.09 as requiring that the state prove that Al–Naseer knew or should have known three facts: that (1) he was involved in an accident; (2) the accident was with a person; and (3) the person sus-

tained bodily injury or death. *Al–Naseer III*, 721 N.W.2d at 626–27.

The court of appeals relied in part on the words "an accident resulting in immediately demonstrable bodily injury to or death of any person," contained in section 169.09, subdivision 1, as reinforcing its interpretation. *See Al–Naseer III*, 721 N.W.2d at 626. But, as the state points out, it is more likely that the legislature included the phrase "immediately demonstrable" to prevent criminal liability for leaving-the-scene after first stopping, where the victim does not complain of injury at the scene of the accident. And, although section 609.21, subdivision 1(7), applies where the driver violates either subdivision 1 or 6 of section 169.09, subdivision 6 does not include "immediately demonstrable" language.

It may be impossible for the driver to know, without stopping, whether or not the accident produced bodily injury or death. In fact, the requirement that the bodily injury or death be "immediately demonstrable" suggests that the driver has performed some investigation. Stated another way, if the duty to stop only arises when the driver can perceive, at the moment of the accident, that the person has an immediately demonstrable bodily injury, the duty to stop will be severely reduced. This is inconsistent with the public safety purposes of section 169.09, to encourage drivers to stop, to notify authorities, and to give aid.

Finally, the court of appeals' interpretation would be particularly limiting when applied to some of the other subdivisions of section 609.21. In 1996, when the legislature amended section 609.21 to add the leaving-the-scene offense, it inserted that crime within each of the six subdivisions that describe criminal vehicular crimes: criminal vehicular homicide resulting in death (subdivision 1), criminal vehicular

operation resulting in great bodily harm (subdivision 2), criminal vehicular operation resulting in substantial bodily harm (subdivision 2a), criminal vehicular operation resulting in bodily harm (subdivision 2b), criminal vehicular operation resulting in death to an unborn child (subdivision 3), and criminal vehicular operation resulting in injury to an unborn child (subdivision 4). Act of Apr. 11, 1996, ch. 442, § 33, 1996 Minn. Laws 1176, 1194–1198. Applying the court of appeals' interpretation of the mens rea standard of section 609.21 would render subdivisions 3(7) and 4(7) virtually meaningless because it would require that the driver not only know that he hit a person who had immediately demonstrable bodily injury, but also know that there was injury to an unborn child.

Ultimately, we reject the requirement of knowledge of bodily injury or death because a driver has an affirmative duty to stop in situations where there has been no bodily injury or death. For example, a driver has a statutory duty to stop if the driver has an accident involving an unattended vehicle. *See* Minn.Stat. § 169.09, subd. 4 (2006). We conclude that the mens rea standard must relate to the culpable act (failing to stop when there was a duty to stop), not to the consequences of that act (causing property damage or bodily injury).[2]

*The "Accident" Standard*

The district court applied an "accident" mens rea standard that only required proof that the driver knew that there was an accident. This standard would be appropriate if there was a legal requirement to stop for every type of accident, because then knowledge of any accident would put the driver on notice of the duty to stop. But some accidents do not impose a duty to stop,[3] and thus knowledge of an accident alone is not sufficient to satisfy the mens rea element.

*The "Person" Standard*

Al–Naseer argues that a driver is required to know that (1) he had an accident, and (2) the accident involved a "person." We agree that this is part of the mens rea standard, but we do not agree that the required knowledge is limited to the involvement of a person because the statutes also impose a duty to stop if the driver's vehicle hit another vehicle, whether occupied or unattended. Minn.Stat. § 169.09, subds. 2 and 4 (2006).

*The "Person or Vehicle" Standard*

At oral argument the state made clear that it was advocating for a mens rea standard that would require knowledge that the driver's vehicle was in an accident of the type that imposes a duty to stop— i.e., one involving a person or another vehicle. We agree that this is the appropriate standard because it bases the mens rea element on the culpable act.

This conclusion is supported, at least indirectly, by the court of appeals' decision

**2.** *See, e.g., Benniefield,* 678 N.W.2d at 48–49 (concluding that because the mere possession of drugs is an illegal act, the possessor need not know that the illegality is enhanced by possession in a particular location, such as school property).

**3.** *See, e.g.,* Minn.Stat. § 169.09, subd. 5 (2006) (providing that the driver involved in an accident resulting in damage to fixtures legally upon or adjacent to a highway is only required to take reasonable steps to locate and notify the owner or person in charge of the property). As the state concedes, and Al–Naseer agrees, the statutes do not impose a duty to stop if a vehicle hits a deer, or a highway sign. Thus a person who does not know what his vehicle hit is not on notice that he has a duty to stop. In other words, knowledge of an accident alone is not enough to provide notice because certain accidents (animals and fixtures) do not require the driver to stop.

in *State v. Angulo*, which held that "a defendant who fires a gun intending to kill is put on notice that if a peace officer engaged in official duties is killed, whether or not the defendant knew the officer's identity, the defendant will be charged [with an enhanced crime] under Minn.Stat. § 609.185(4)." 471 N.W.2d 570, 573 (Minn. App.1991), *rev. denied* (Minn. Aug. 2, 1991). Similarly, a driver who knows that he or she has been involved in an accident with a person or another vehicle is put on notice that there is a duty to stop, and the failure to stop justifies an enhanced crime where the accident results in the death of another person, whether or not the driver knew that the accident caused the death of another person.

This conclusion also serves the public welfare purpose of the statutes, to assure that drivers who are involved in an accident with a person or another vehicle stop, notify authorities, and give aid to any injured persons until the authorities arrive.[4]

*The "Reason to Know" Standard*

The state's full argument is that the mens rea element is satisfied if the driver knew "or had reason to know" that the accident involved a person or a vehicle. But we are reluctant to imply a negligence standard for criminal liability where the legislature has not expressed such a standard. Where the legislature has intended to include negligence in a criminal mens rea standard, it typically has done so expressly.[5] Because the leaving-the-scene statute does not describe any mens rea standard, we decline to imply an intent to base criminal liability on a reason to know.

 This is not to say that the state must prove knowledge by direct evidence. The proof of knowledge may be by circumstantial evidence. *See State v. Siirila*, 292 Minn. 1, 10, 193 N.W.2d 467, 473 (1971) (noting that it is permissible to infer that the defendant knew he had marijuana in his jacket from evidence that the marijuana was found in the jacket the defendant was wearing). Actual knowledge that there was a duty to stop is proven where the circumstantial evidence leads the fact finder to conclude, beyond a reasonable doubt, that the driver must have known that there was an accident that involved a person or a vehicle. *See, e.g., Sidway*, 431 A.2d at 1239–40 (stating that a driver's actual knowledge of an accident may be proven by circumstantial evidence concerning the extent of the damage and the force of the impact); *Tooke v. Commonwealth*, 47 Va.App. 759, 627 S.E.2d 533, 536–37 (2006) (stating that the circumstantial evidence is sufficient to prove beyond a reasonable doubt that the defendant knew he had caused an accident in which occupants

---

4. If the factfinder determines that the driver did not have knowledge that the accident was of the type that triggered the duty to stop, the mens rea element described above would not be satisfied. This may be a shortcoming in the statute because there could be good reason for the legislature to require such a driver to stop for the limited purpose of determining what type of accident occurred, and then to prohibit the driver from leaving the scene if the investigation reveals that the accident was of the type that imposed a duty to stop. But the statute as currently written cannot be reasonably read to include that requirement.

5. *See, e.g.,* Minn.Stat. § 609.322, subd. 1(3) (2006) ("receives profit, knowing or *having reason to know* that it is derived from the prostitution" (emphasis added)); Minn.Stat. § 609.342, subd. 1(e)(ii) (2006) ("the actor knows or *has reason to know* that the complainant is mentally impaired" (emphasis added)); Minn.Stat. § 609.53, subd. 1 (2006) ("knowing or *having reason to know* the property was stolen" (emphasis added)); Minn. Stat. § 609.749, subd. 1(1) (2006) (the actor knows or *has reason to know* [that the conduct] would cause the victim under the circumstances to feel frightened (emphasis added)).

of the vehicle forced off the road would have sustained personal injury, where the evidence shows that two other drivers stopped and rendered aid or reported the accident and that the defendant had an opportunity to observe the accident equal to or better than that of the other drivers).

### III.

 We next consider whether the district court's verdict applied this mens rea standard. The state argues that the district court's verdict incorporated this standard because the court found that Al-Naseer was aware that he had been involved in a "motor vehicle accident." The state argues that the words "motor vehicle accident" imply that the defendant's vehicle hit a person or another vehicle. The state suggests that if the "driver hits a wild animal, for example, he has not been in an 'accident.' "

We do not find this differentiated definition of "motor vehicle accident" in the statute and conclude that it cannot be implied from the context. Section 169.09 does not use the term "motor vehicle accident," but repeatedly uses the term "accident" to describe both situations where there is a duty to stop and situations where there is no duty to stop. *Compare* Minn.Stat. 169.09, subd. 1 (stating that the driver who is "involved in an *accident* resulting in immediately demonstrable bodily injury to or death of any person shall immediately stop the vehicle" (emphasis added)), *with* Minn.Stat. § 169.09, subd. 5 (2000) (stating that the driver who is "involved in an *accident* resulting only in damage to fixtures legally upon or adjacent to a highway" need only notify the owner and report the accident (emphasis added)).

The state further argues that we can infer that the district court applied the "accident with a person or vehicle" stan-

dard from the finding that Al-Naseer "consciously and intentionally left the scene of the accident in violation of Minn. Stat. § 609.21, subd. 1(7)." But this finding simply begs the question of what standard was used to establish a violation of section 609.21, subdivision 1(7).

Accordingly, we affirm the reversal of Al-Naseer's conviction but remand to the district court to reconsider its verdict based on the present record and to make amended findings in light of the mens rea standard that requires proof that Al-Naseer knew that his vehicle was involved in an accident with a person or another vehicle.

Affirmed in part, reversed in part, and remanded for reconsideration.