STATE of Minnesota, Appellant,

v.

Ricky J. CARUFEL, Respondent.

No. A07–1711.

Supreme Court of Minnesota.

April 29, 2010.

Lori Swanson, Attorney General, St. Paul, Minnesota; and Charles E. MacLean, Winona County Attorney, Kevin P. O'Laughlin, Justin A. Wesley, Assistant Winona County Attorneys, Winona, Minnesota, for appellant.

David W. Merchant, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant State Public Defender, St. Paul, Minnesota, for respondent.

## OPINION

DIETZEN, Justice.

Ricky J. Carufel was found guilty of three counts of third-degree controlled substance crime in violation of Minn.Stat. § 152.023, subd. 1(1) (2008) (prohibiting the sale of cocaine), and three counts of second-degree controlled substance crime in violation of Minn.Stat. § 152.022, subd. 1(6)(i) (2008) (prohibiting the sale of cocaine in a park zone). The district court entered judgments of conviction and sentences for the second-degree controlled substance crimes, and did not adjudicate the third-degree controlled substance crimes because they were lesser-included offenses. Carufel challenged the convic-

tions and sentences on the ground that the offenses did not occur within a "park zone" as defined by statute. The court of appeals agreed and reversed Carufel's second-degree controlled substance convictions, and remanded for adjudication and sentencing on the third-degree controlled substance offenses. We granted review and reverse the court of appeals and reinstate Carufel's second-degree controlled substance convictions.

In December 2004 and January 2005, Winona police were working with confidential reliable informants (CRIs) to arrange for the purchase of controlled substances in the Winona area. On December 27, 2004, a police investigator, as part of a controlled buy, searched a CRI, and then provided the CRI with buy money and a small digital recorder. The investigator followed the CRI to Carufel's residence at 307 Adams Street in Winona. The digital recording device successfully recorded a controlled buy from Carufel at his residence.

Subsequently, the investigator arranged two additional controlled buys on December 29, 2004, and January 6, 2005, which were conducted in substantially the same manner, but with an additional CRI and with an additional police officer assisting. Both of the sales were conducted at Carufel's residence. The substances purchased during all three controlled buys later tested positive for cocaine.

Carufel was charged with offenses in three separate complaints filed in April 2005. Specifically, each complaint alleged one count of third-degree controlled substance crime in violation of Minn.Stat. § 152.023, subd. 1(1) (prohibiting the sale of cocaine), and one count of second-degree controlled substance crime in a park zone in violation of Minn.Stat. § 152.022, subd. 1(6)(i) (elevating the degree of the crime for selling cocaine in a park zone), arising out of the controlled buys conducted on December 27, 2004, December 29, 2004, and January 6, 2005. Carufel pleaded not guilty, and the district court granted the State's motion to join the three complaints for trial.

At trial, the State presented testimony describing the three controlled buys at the Carufel residence. The CRIs testified that Carufel sold them cocaine at his residence on the dates in question. Both the investigator and the police officer testified that Carufel's residence was within one block of Gabrych Park. The investigator drew a large diagram of the area surrounding Carufel's residence, which depicted a residential area divided into rectangular blocks bounded on all four sides by city streets. The diagram was admitted into evidence for illustrative purposes.

The superintendent of parks and forestry for the City of Winona testified that the city has designated Gabrych Park as a public park, and that the park is bounded on the north side by 6th Street, on the west side by Steuben Street, on the south side by 7th Street, and on the east side by Buchanan Street. Carufel's residence is located near the northeast corner of 6th Street and Adams Street, on the block immediately east of Gabrych Park. Carufel's block is bounded on the north side by 6th Street, on the west side by Buchanan Street, on the south side by 7th Street, and on the east side by Adams Street. The superintendent concluded that Carufel's residence is 330 feet from Gabrych Park and within one city block of the boundary of the park. On cross-examination, he agreed that "[t]o get from Gabrych Park to 307, you would go one block and turn right and go two houses."

After the close of the State's case, Carufel moved to dismiss the second-degree controlled substance charges arguing that the State failed to prove that the sales had

occurred in a "park zone," which under Minn.Stat. § 152.01, subd. 12a, includes the park and "the area within 300 feet or one city block, whichever distance is greater, of the park boundary." Carufel relied on Fuller's testimony that Carufel's residence was 330 feet from Gabrych Park, and that to get from Gabrych Park to Carufel's residence a person would need to walk one block and then turn and then go two or three houses, depending on the route. The district court denied Carufel's motion.

During the jury deliberations, the jurors sent the court a note asking, "What is the legal definition of 'one city block?'" After consulting with the parties, the court informed the jury that Minnesota law contains no definition of "one city block" and that it was a question of fact for the jury to decide. The jury found Carufel guilty on all six counts. The district court imposed concurrent sentences of 48 months, 54 months, and 54 months on the second-degree controlled substance convictions. Pursuant to Minn.Stat. § 609.04 (2008) (prohibiting conviction for lesser-included offenses), the district court did not adjudicate or sentence Carufel on the third-degree controlled substance crimes.

The court of appeals affirmed the district court's decision to join the cases for trial, reversed Carufel's second-degree controlled substance convictions on the ground that the controlled buys did not occur within a park zone, and remanded for adjudication and sentencing on the third-degree controlled substance offenses. *State v. Carufel*, No. A07–1711, 2008 WL 5396714, at *4–*5 (Minn.App. Dec.30, 2008). We granted review solely on the issue of whether the controlled buys occurred within a park zone.

## I.

The State claims the court of appeals misconstrued Minn.Stat. § 152.01, subd. 12a, when it concluded that the controlled buys did not occur within a park zone, and therefore Carufel's convictions for second-degree controlled substance crimes should be reinstated. Carufel contends that the court of appeals properly construed subdivision 12a, and accordingly the decision of the court of appeals should be affirmed.

Statutory construction presents a question of law that we review de novo. *State v. Al–Naseer*, 734 N.W.2d 679, 683 (Minn.2007); *State v. Stevenson*, 656 N.W.2d 235, 238 (Minn.2003). The goal of all statutory construction is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008). When interpreting a statute, we must first determine whether the statute's language on its face is clear and unambiguous. *Al–Naseer*, 734 N.W.2d at 684. In doing so, we assign the words of a statute their plain and ordinary meaning. *See* Minn.Stat. § 645.08 (2008). When analyzing the plain and ordinary meaning of words or phrases, we have considered dictionary definitions. *State v. Hartmann*, 700 N.W.2d 449, 453–54 (Minn.2005). If the language of the statute is not ambiguous, then we must apply its plain meaning. *Al–Naseer*, 734 N.W.2d at 684; *State v. Maurstad*, 733 N.W.2d 141, 148 (Minn.2007). A statute is ambiguous if the language is susceptible to more than one reasonable interpretation. *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). When a criminal statute is ambiguous, courts should construe the statute narrowly in favor of lenity. *Maurstad*, 733 N.W.2d at 148. But such construction does not require "the narrowest possible interpretation to the statute." *State v. Zacher*, 504 N.W.2d 468, 473 (Minn.1993).

Minnesota Statutes chapter 152 sets forth, among other things, different degrees of offenses for the sale of controlled

substances. For example, if a person unlawfully sells any amount of cocaine, that person is guilty of a third-degree controlled substance crime. Minn.Stat. § 152.023, subd. 1(1). Upon conviction, the penalty may be imprisonment of not more than 20 years, or a fine of not more than $250,000, or both. Minn.Stat. § 152.023, subd. 3(a) (2008).

In 1989, the legislature added "school zone" and "park zone" to chapter 152 of the criminal code, Act of June 1, 1989, ch. 290, art. 3, §§ 4–5, 1989 Minn. Laws 1595, 1595–96 (codified at Minn.Stat. § 152.01, subds. 12a, 14a (2008)), and established elevated penalties for selling drugs in those zones. *Id.* § 9, 1989 Minn. Laws 1595, 1596–98 (codified at Minn.Stat. § 152.022, subd. 1(6) (2008)). Thus, if the sale occurs in a "school zone" or a "park zone,"[1] a person is guilty of a second-degree controlled substance crime. Minn. Stat. § 152.022, subd. 1(6)(i). Upon conviction, the penalty may be imprisonment of not more than 25 years, or a fine of not more than $500,000, or both. Minn.Stat. § 152.022, subd. 3(a) (2008). The purpose of the statutes is to enhance the penalty for those who sell drugs in a "school zone" or "park zone" in an effort to protect children from the dangers associated with illegal drug use. *See State v. Benniefield,* 678 N.W.2d 42, 47 (Minn.2004) ("There is a genuine risk that those involved in illegal drug use ... could bring the dangers associated with illegal drugs into school [or park] zones. For example, abandoned drugs or discarded drug paraphernalia might be found in or around areas of drug use.").

At issue is whether the controlled buys took place in a "park zone" within the meaning of Minn.Stat. § 152.01, subd. 12a, which provides:

> "Park zone" means an area designated as a public park by the federal government, the state, a local unit of government, a park district board, or a park and recreation board in a city of the first class. "Park zone" includes the area within 300 feet or one city block, whichever distance is greater, of the park boundary.

It is undisputed that Gabrych Park is designated as a public park, and therefore qualifies as a "park zone" under subdivision 12a. Further, the parties agree that Carufel's residence is more than 300 feet from the boundary of Gabrych Park. Thus, the question is whether Carufel's residence is within a "park zone" on the alternative ground that it is located in "the area within ... one city block" of the boundary of Gabrych Park.

Initially, Carufel asserts that the term "one city block" is ambiguous because it is not defined in the statute. To support his assertion, Carufel relies on *State v. Estrella,* 700 N.W.2d 496, 501 (Minn.App.2005). In *Estrella,* the court of appeals rejected a claim that the term "one city block" applied to a parcel of undivided land that was at least 3075 feet by 2050 feet. *Id.* The court of appeals explained that "where no actual grid system is present, the term 'one city block' does not apply" and therefore the within–300–feet provision controls. *Id.* In dicta, the court of appeals stated that the statute was "ambiguous in its definition of how far from the actual park boundary a 'park zone' extends" because

---

1. The legislature also added "public housing zone" to chapter 152 of the criminal code in 1991, and "drug treatment facility" in 1997. Act of May 30, 1997, ch. 239, art. 4, §§ 2, 5, 7, 1997 Minn. Laws 2787, 2787–90 (codified at Minn.Stat. § 152.01, subd. 22 (2008)); Act of June 3, 1991, ch. 279, §§ 1, 4, 1991 Minn. Laws 1282, 1282–83 (codified at Minn.Stat. § 152.01, subd. 19 (2008)).

the plain language of the statute did not provide an exact definition of the term "one city block." *Id.* at 500. Unlike *Estrella*, the land adjacent to Gabrych Park is divided into rectangular residential blocks. Because city block dimensions vary from city to city, the exact dimensions of any particular park zone will depend on the size of the grid system surrounding the park. Variations in the dimensions of a city block adjacent to a particular park from city to city, however, do not make the statutory language ambiguous because the boundaries of the "park area" are ascertainable. Thus, *Estrella* is not persuasive authority that the phrase "one city block" is ambiguous when applied to the facts of this case.

The State contends that when the land adjacent to a park is divided into rectangular blocks, the phrase "the area within ... one city block" in subdivision 12a is plain and unambiguous. Citing *The American Heritage Dictionary* 149 (New College Ed. 1980), the State notes that a "block" is commonly defined as a "rectangular section of a city or town bounded on each side by consecutive streets." *See also Black's Law Dictionary* 194 (9th ed. 2009) (defining "block" to include "[a] municipal area enclosed by streets"). Carufel urges us to interpret the "one city block" language of subdivision 12a to mean "the section of 6th Street [that is] between Buchanan and Adams streets." According to Carufel, the statement "I'm one block from the park" means the length of one side of a block. Carufel argues that the "whichever distance is greater" language of Minn.Stat. § 152.01, subd. 12a, supports his interpretation of the "one city block" language. Based on his interpretation of the phrase "one city block," Carufel argues that a park zone extends only to the side of the block directly across the street from the park, and the two sides of the block that run perpendicular to the park.

■ Subdivision 12a sets forth two methods for determining the area of a "park zone" in a particular case, and provides that the method using the greater distance from the park boundary to calculate the area shall be applicable. First, the "park zone" includes the area within 300 feet of the park boundary. Based upon this method, the park zone includes a perimeter area bounded by sides extending 300 feet from the park boundaries in all directions. Second, the "park zone" includes the area within one city block of the park boundary. Pursuant to the second method, the park zone includes the area bounded by the consecutive streets surrounding the city blocks directly adjacent to the public park.[2] This is consistent with the commonly understood definition of block as a rectangular section of a city or town bounded on each side by consecutive streets.[3]

**2.** The concurrence's "distance only" interpretation is flawed because it reads the word "area" out of the statute. Specifically, a "park zone" includes both a distance measurement of "one city block" and includes the "area" within one city block. Minn.Stat. § 152.01, subd. 12a. *See State v. Spence,* 768 N.W.2d 104, 108 (Minn.2009) (explaining that we avoid statutory constructions that render words superfluous). The concurrence erroneously asserts that our analysis fails to recognize that the phrase "one city block" refers to a distance measurement. We read the statutory phrase "one city block" to mean both a distance measurement from the park, and to encompass the entire area of that city block. The statutory phrases "area within" and "whichever distance is greater" demonstrate that the legislature contemplated concepts of both area and distance. These concepts are slightly different. Distance is a measurement of the line between two objects. Area is a measurement of the entire surface of an object. Carufel's house falls both within the distance measurement of one city block and within the area measurement of a city block.

We reject Carufel's argument that a park zone is limited to the side of the block directly across the street from a park, and the two sides of the block that run perpendicular to a park. The flaw in Carufel's park zone argument is that Carufel ignores the "area within" language of Minn. Stat. § 152.01, subd. 12a.[4]

■ We observe that subdivision 12a does not explicitly limit or modify the phrase "the area within ... one city block ... of the park boundary" in any way. Had the legislature intended to limit the meaning of "the area within ... one city block ... of the park boundary" to mean something less than all the land within a block directly adjacent to the park, the legislature could have done so with words like "block front," "block face," or "block portion." But the legislature did not do so, and the court cannot add words to a statute not supplied by the legislature.

*Wallace v. Comm'r of Taxation,* 289 Minn. 220, 230, 184 N.W.2d 588, 594 (1971).

■ We conclude that when the land surrounding a public park is an area divided into rectangular blocks bounded by city streets on all four sides, the phrase "the area within ... one city block ... of the park boundary" in Minn.Stat. § 152.01, subd. 12a, is not ambiguous and the park zone includes the entire area of a block that is directly adjacent to the park. Our reading of the statutory language is consistent with the purpose of the statute— protecting children from the dangers associated with illegal drug use by creating a buffer zone around parks.

Carufel's house is located on the western side of Adams Street, the side of the street closest to Gabrych Park. Although Carufel's house faces Adams Street, it is located within the block directly adjacent to Gabrych Park. Consequently, we conclude that Carufel's house is located within a

3. The concurrence's illustration overly complicates the meaning of subdivision 12a and loses sight of the issue before the court. First, the concurrence adds the concept of property ownership to support its theory that it is the centerline of a public street and not the curbline that must be used to determine the distance of one city block from Gabrych Park. Thus, the concurrence suggests that the "park boundary" and presumably the alternative 300–foot measurement is the centerline of the street. The property ownership theory, however, was not briefed, argued, or considered by the district court or court of appeals and therefore is not before us. Moreover, subdivision 12a does not state that legal ownership is relevant in determining the meaning of one city block from the "park boundary." Such an interpretation would require us to add words to the statute that do not exist. Further, the plain and ordinary meaning of "park boundary" is the edge of the park, not the centerline of the street. Second, the concurrence presents a hypothetical 8–block area that is not before the court. In this case, the area in question is the block containing Caru-

fel's residence, which is directly adjacent to the eastern boundary of Gabrych Park. Our decision is limited to the actual facts presented and not a hypothetical illustration that is materially different. *See State v. Taylor,* 650 N.W.2d 190, 203 n. 11 (Minn.2002) (declining to respond to the argument of the concurrence/dissent because it would require the court to render an advisory opinion).

4. As discussed above, Carufel asserts that one city block means a three-sided perimeter measurement. According to Carufel, neither the fourth side of the block or the area of the block is within the meaning of one city block. The concurrence rejects the exclusion of the fourth side of the block, but fails to address Carufel's argument that the area within the block is also excluded. In doing so, the concurrence implicitly accepts Carufel's argument that a sale in Carufel's backyard is excluded. Unlike Carufel and the concurrence, we are not willing to read Minn.Stat. § 152.01, subd. 12a, in a manner that ignores the "area within" language of the statute.

"park zone" as plainly defined by Minn. Stat. § 152.01, subd. 12a.

## II.

■■■ Carufel argues that the State did not provide sufficient evidence to support his second-degree controlled substance convictions because during cross-examination the park superintendent confirmed that "[t]o get from Gabrych Park to 307, you would go one block and turn right and go two houses."

■■■■■ "Where there is a challenge to the sufficiency of the evidence, our review on appeal is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb,* 440 N.W.2d 426, 430 (Minn.1989). "The weight and credibility of the testimony of individual witnesses is for the jury to determine." *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989).

Two police officers testified that Carufel's residence was within "one city block" of Gabrych Park. The investigator also drew a large diagram of the area surrounding Carufel's residence, reflecting a residential area divided into rectangular blocks bounded on all four sides by city streets around the location of Gabrych Park. The diagram was admitted into evidence for illustrative purposes. Additionally, the park superintendent testified that Carufel's residence was within one block of Gabrych Park. We conclude that viewed in the light most favorable to the conviction, this testimony was sufficient to prove that Carufel's residence was within the park zone surrounding Gabrych Park.

The court of appeals incorrectly focused on the park superintendent's cross-examination to determine the drug sales did not occur within "one city block" of Gabrych

Park. In doing so, the court of appeals stated that "one city block" was not—"one city block plus a right turn and two houses or one city block plus a left turn and three houses." *Carufel,* 2008 WL 5396714, at *3. But when the evidence is viewed in the light most favorable to the conviction, the jury could reasonably construe the park superintendent's cross-examination testimony as meaning "you would go one block and turn right [*on the same block*] and go two houses," which was still in the "park zone" because it was inside the "area within ... one city block" of the park boundary. Accordingly, we reverse the court of appeals and reinstate Carufel's second-degree controlled substance convictions.

Reversed.

PAGE, Justice (concurring).

I concur in the result only.

ANDERSON, PAUL H., Justice (concurring).

I concur in the result reached by the majority but disagree with how the majority interprets and applies Minn.Stat. § 152.01, subd. 12a (2008)—the statute that defines "park zone." Minnesota Statute § 152.01, subd. 12a, provides that a park zone "includes the *area* within 300 feet or one city block, whichever *distance* is greater, of the park boundary." (Emphasis added.) In my view, the use of the term "city block" in the statute unambiguously refers to a numerical measure of a distance equal to a linear segment of a street bounded by consecutive cross streets.

I reach this result because the key concept in the statute is one of distance, not area. While the statute does include the concept of area, it is from a linear measurement of distance—"one city block"— that the area included in a park zone is

determined. Because I conclude that there is no concept of area in the statute other than the area that is ascertained by using the distance of "one city block," my interpretation and application of Minn. Stat. § 152.01, subd. 12a, is at odds with that of the majority. More specifically, I conclude that once we determine that "one city block" is a linear measurement of distance and then decide how that distance is determined, we need say no more. This is so because after making these two decisions, we have a sufficient basis to determine the area of the park zone and whether Carufel was selling drugs within this zone.

Minnesota Statutes § 152.01, subd. 12a, provides that a park zone is delimited by measuring "300 feet" or "one city block" from a park boundary, "whichever *distance* is greater." (Emphasis added.) I conclude that both "300 feet" and "one city block" as used in the statute, are measures of "distance" that are used to ascertain the "area" of a park zone. Both "300 feet" and "one city block" should be treated consistently. It cannot be disputed that "300 feet" is a measure of distance. Thus, to be consistent, the words "one city block" must also be a measure of distance.

The majority would have us divide the land surrounding a public park into rectangular blocks bounded by city streets on all four sides and concludes that the "park zone includes the entire area of a block that is directly adjacent to the park." By adopting this definition of "city block" the majority conflates the different means by which distance and area are measured[1] and as a result unduly complicates the straightforward concept of distance as articulated in the statute. Distance is a linear measurement—the extent of the

space between two objects or points—and is typically expressed in terms such as: 10 feet wide; 5 feet, 10 inches tall; 100 yards long; or "300 feet." Area is a different type of measurement. It is a measure of the surface area of something and this measurement of area is expressed in terms distinctly different from those used for distance, i.e. square foot, square yard, square kilometer, square mile, or square block. Because distance and area are two distinct concepts of measurement, they should not be conflated. While measurements of distance can be used to determine area, distance should not be equated or confused with a measurement of area. It is at this point that the majority and I part company.

While the term "city block," as indicated above, can be used to determine an area such as a square block—or as the majority states, "a rectangular section of a city or town bounded on each side by consecutive streets"—the term "city block" is not used in the statute to mean area. In contrast to the majority, I conclude that the legislature intended the term "city block" to mean a measure of distance that equals a linear segment of a street bounded by consecutive cross streets. Supporting my conclusion is the observation that if the legislature wanted the statute to define area as being bounded on each side by consecutive cross streets, it could have used terms such as the area enclosed within the boundary of adjacent streets, city streets, or even a square block or rectangular block. But the legislature did not do so; rather, it gave us a measurement of distance which we are to use to determine the area in a park zone.

---

**1.** I note that the majority does recognize this difference when it says that "[d]istance is a measurement of the line between two objects. Area is a measurement of the entire surface of an object."

Because "city block" is a measure of distance used to determine the area of a park zone, we must be precise in how we define where that distance begins and ends. This second question is more difficult to answer than the first because the legislature has not provided a definition and there are several alternatives to choose from in determining the distance. If a city block means a segment of a street bounded by consecutive cross streets, I conclude that the best answer to this question is that a city block starts at the middle of one of the cross streets, and ends at the middle of the next cross street. This definition is consistent with the general rule of law on land title descriptions and boundaries.

It is a general rule of land title descriptions and boundaries that a municipality takes only an easement in a public right of way and that a conveyance carries title to the center of the right of way subject to the public easement. While this is a rule of construction that may be rebutted by an express provision showing the right of way was not intended to be conveyed, I conclude that it is appropriate to apply this general rule when interpreting the meaning of Minn.Stat. § 152.01, subd. 12a. More particularly, I refer to Joyce Palomar, Patton and Palomar on Land Titles § 146 (3d ed. 2003), which provides that:

Whether acquired by deed, dedication, condemnation, or prescription, the general rule is that in acquiring public rights of way, a municipality takes an easement only. . . . It is the general rule to construe such conveyances to carry the title to the center of the right of way, subject to the public easement, provided the grantor at the time owned to the center, and no words of specific description show a contrary intent.

Our case law likewise recognizes that "any abutting landowner owns to the middle of the platted street or alley and that the soil and its appurtenances, within the limits of such street or alley, belong to the owner in fee, subject only to the right of the public to use or remove the same for the purpose of improvement." *Kochevar v. City of Gilbert*, 273 Minn. 274, 276, 141 N.W.2d 24, 26 (1966); *see also Harrington v. Saint Paul & Sioux City R.R. Co.*, 17 Minn. 215 (1871) ("We see no reason why the trustee's deed to plaintiff did not pass to her the legal title to the fee of the land to the center of the street adjoining her lots, as in the ordinary case of conveyance of lands adjoining a highway.").

The definition I propose provides a precise, unambiguous answer to the question of what is meant by the linear measurement of a "city block" in the statute. Moreover, this definition eliminates the possibility of any gaps within the area comprising the park zone and provides a context to answer questions we may face when applying the statute in the future. The attached diagram illustrates the precision that follows from the use of the term "city block" as I have defined it.

The gray shading indicates the area determined to be part of the park zone that is relevant to this case by using the distance of one city block as the statutorily-mandated unit of measurement.
Blocks A thru G in this diagram are depicted for illustrative purposes only and are not intended to have any specific bearing on the analysis in this concurrence.

While my interpretation and application of Minn.Stat. § 152.01, subd. 12a, will have the same end result as the majority's interpretation, the distinction between our respective analyses of the statute is important. This is so because the result under the two definitions may not be the same in all instances. For example, the result may differ when determining whether a point located on the square blocks that lie to the northwest, northeast, southeast, and southwest of a park is within the park zone. Under my interpretation, we ascertain the distance of a city block, then use that distance to measure from the edge of the park. Using this linear measurement, we can easily ascertain the area included within the park zone. Only the locations or places that are within the surface area created by measuring the distance of 300 feet or one city block, whichever distance is greater, from the edge of the park would be within the park zone.

I find the majority's statement that a park zone "includes the entire area of a block that is directly adjacent to the park" to be confusing because it unnecessarily brings into the equation an entirely different unit of measurement, "the entire area of a block." Moreover, the majority potentially answers or presumes to answer a broader question than we are asked to address today. Under the majority's holding, the total area within the square blocks that lie to the northwest, northeast, southeast, and southwest of Gabrych Park are "directly adjacent" to the Park and therefore under its definition must be included within the park zone. Whether all or part of those square blocks are in the park zone is not a question before us. Here, I take issue with the majority's characterization of the concurrence as being an advisory opinion because it answers more than the question before us. The concurrence does

no such thing. I do not purport to answer any specific question regarding the outcome of a hypothetical, I attempt only to elucidate my interpretation of the statute and how it is to be applied, and to demonstrate the distinction between my interpretation and that of the majority.

While I agree with Carufel that the words "one city block" as used in Minn. Stat. § 152.01, subd. 12a, must be interpreted as being a unit of linear measurement, I disagree with Carufel's application of the statute. Carufel fails to use "city block" as a measurement of distance to determine the area of a park zone. Once the distance of a city block is determined, we must use that distance to delimit the park zone. Setting the boundary of the park zone is accomplished by measuring the length of one city block outward in any direction from any point on the park boundary. All of the surface area between the park boundary and the outward extremity of that measurement is in the park zone.[2]

Even though Carufel's house faces Adams Street, it is within a park zone because it is located within the area ascertained by measuring the length of one city block outward from the boundary of Gabrych Park. (See attached diagram). Houses and other points on the western side of Adams Street are within one city block of the edge of the park and are therefore within the park zone; but houses across the street on the eastern side of Adams Street lie beyond the park zone because they are not within one city block of the park. Under my interpretation, Carufel's second-degree controlled substance convictions are sustained because his house lies within the area created by measuring the distance of one city block from the park boundary.

Finally, if one were to conclude that Minn.Stat. § 152.01, subd. 12a, is ambiguous—which I do not—I believe my interpretation should still prevail over that of the majority because the rule of lenity would then apply. The rule of lenity states that "[w]hen the statute in question is a criminal statute, courts should resolve ambiguity concerning the ambit of the statute in favor of lenity." *State v. Stevenson*, 656 N.W.2d 235, 238 (Minn.2003); *see also State v. Walsh*, 43 Minn. 444, 445, 45 N.W. 721, 721 (1890) ("A statute is not to be deemed to make an act criminal, which would not have been so except for the statute, unless the intention of the legislature to effect that result is apparent, and not seriously doubtful."). Applying the rule of lenity, my interpretation of Minn. Stat. § 152.01, subd. 12a, is more appropriate than the majority's interpretation because it is the more narrow interpretation of this criminal statute.

To conclude, I would reverse the court of appeals and reinstate Carufel's second-degree controlled substance convictions. But, I would do so under an interpretation of the statute that holds one city block as used in the statute is a linear measure of distance and that this distance is equal to a segment of a street bounded by consecutive cross streets, a segment which begins and ends at the middle point of each cross street.

---

**2.** The majority states that "the concurrence implicitly accepts Carufel's argument that a sale in Carufel's backyard is excluded [from the park zone]." This is a flawed reading of my concurrence and my response to this statement is contained in the analysis set forth herein.