STATE of Minnesota, Respondent,

v.

Donald Carrol HANSEN, Appellant.

No. A11–546.

Court of Appeals of Minnesota.

Nov. 21, 2011.

Lori Swanson, Attorney General, St. Paul, MN; and Brian D. Simonson, St. Louis County Attorney's Office, Hibbing, MN, for respondent.

Nancy A. Roe, Colosimo Patchin Kearney & Brunfelt, Virginia, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge; LARKIN, Judge; and STAUBER, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant was convicted of petty misdemeanor deer baiting under Minn.Stat. § 97B.328, for hunting deer on his farm[1] from a deer blind located within the vicinity of a pile of discarded vegetables. Appellant claims that the district court erred by finding him guilty because as a farmer whose use of discarded vegetables as fertilizer is part of a normal and long-standing agricultural practice, his conduct was specifically exempted from the statutory definition of deer baiting.

## FACTS

Appellant Donald Carrol Hansen and his father, Charles Hansen, own a 40–acre

---

1. It is uncontested that appellant is a farmer and that his land is designated as agricultural land in Minnesota for tax purposes.

farm south of Hibbing, where appellant raises vegetables that he sells wholesale to local grocery stores. He also sells produce at two stands, one located in Virginia, and one located on the farm. He grows an array of consumable vegetables, as well as jack-o-lantern pumpkins that are not sold for consumption. Appellant's tillable land includes three fields that encompass 20 to 22 acres, and he leaves one field fallow each year on a rotating basis, sometimes planting the fallow field with "green manure," such as clover or rye, to improve soil quality. Because the soil on appellant's farm is not very fertile, and consistent with optimal recommended agricultural farming practices, appellant also tills spoiled or unsold vegetables into his fields as green manure.

On November 6, 2010, the opening day of deer hunting in appellant's area, appellant received a petty misdemeanor citation for hunting deer with the aid of bait. He had erected a hunting blind just off his centrally-located fallow field, not far from a pile of pumpkins and other discarded vegetable residue. Appellant challenged the citation, and the case proceeded to trial before the district court.

Appellant was charged with violating Minn.Stat. § 97B.328, subd. 1 (2010), which prohibits a person from hunting deer "with the aid or use of bait or feed" or "in the vicinity of bait or feed if the person knows or has reason to know that bait or feed is present." "Bait or feed" is defined as "grains, fruits, vegetables, nuts, hay or other food that is capable of attracting or enticing deer and that has been placed by a person.... *Food that has not been placed by a person and resulting from normal or accepted farming ... activities ... is not bait or feed." Id.,* subd. 3 (emphasis added).

*The State's Witnesses*

Three Department of Natural Resources (DNR) officers testified for the state. Lieutenant Gregory Payton, DNR district supervisor for the Eveleth District, testified that a DNR pilot took aerial photographs of appellant's property on October 19, 2010, and that there were no pumpkins in appellant's fallow field, which was the field closest to appellant's deer blind. Lieutenant Payton testified that on November 4, two days before the opening of deer hunting season, a DNR pilot conducted a second fly-over of appellant's property and took aerial photographs that show a "substantial pile of pumpkins" and "other crop residue" on the field, including corn and other residue Payton could not identify.

On November 6, Lieutenant Payton approached appellant on his property and observed that appellant was hunting from a deer blind located about "50 to 60 yards" from the pumpkin pile. Payton issued appellant the citation and seized his hunting rifle. Payton admitted on cross-examination that appellant's fallow field was too wet for farm machinery on November 6 and that at least one of appellant's planted fields was within shooting range of his deer blind.

DNR conservation officer Donald Bozovsky testified that he drove past appellant's property on November 5, 2010, and observed the pumpkin pile on appellant's fallow field. He stated that he had not seen the pumpkin pile there when he drove by a few days earlier. Bozovsky also testified that he issued a 2009 deer baiting citation to appellant's 14-year-old nephew when the nephew was hunting on appellant's property. Bozovsky stated that the nephew's unlawful behavior on that occasion involved hunting over a pile of pumpkins from an elevated deer stand located about

80 yards from a pumpkin pile on one of appellant's other fields.

Major Roger Tietz, a DNR administrative manager whose responsibilities include enforcement division work, testified that he spoke with appellant at his farm in July and August 2010 about a complaint appellant had made to the DNR about his nephew's 2009 citation. During those conversations, Tietz warned appellant that if he continued to hunt over pumpkins that he had transported into areas where they had not been grown, the DNR would consider it a violation of law. During his visits, Tietz noticed that appellant had "quite a bit of crop damage" and that he was throwing old produce in the fallow field as green manure; he specifically noticed pumpkins and other crop residue in the field in July and August 2010.

During cross-examination, Tietz admitted that in its interpretation of the deer baiting statute, the DNR did not have a "clear understanding of what is a normal agricultural practice." He also admitted that some DNR officers would not have issued a ticket in appellant's situation. On re-cross-examination, he further testified that even if the definition of "agricultural practice" was unclear, the deer baiting statute clearly prohibits a person from placing bait and then hunting over it. The court also questioned Major Tietz and elicited testimony that the DNR permits people to grow "food plots" to attract deer and hunt over them, as long as the food plots are not harvested.

*Defense Witnesses*

Testifying for the defense were appellant; Kendall Dykhuis, an agronomist and horticulturist farm worker for the University of Minnesota Extension Service; Ann Bozich, a farm employee; and Charles Hansen, appellant's father.

Appellant testified that he did not place pumpkins in the fallow field for purposes of baiting deer. Appellant stated that pumpkins and squash are the last crops he harvests during a planting season. The pumpkins that he grows can be used only as jack-o-lanterns, and then have no economic value after October 31. Appellant further stated that he dumped the pumpkins on the fallow field after Halloween because he intended to spread them on the field as green manure in early November, but that the field was too wet to permit the use of farm machinery. He also testified that on the date of his citation there were pumpkins in all three of his fields, some rotten or partially eaten.

Appellant further testified that he could shoot a deer in any of his three fields from the location of his deer blind, and that his deer blind was actually closer to the pumpkin patch than it was to the pile of discarded pumpkins in the fallow field.[2]

Kendall Dykhuis testified that he had informed appellant about recommended farming practices over the course of 20 years, including advising appellant about how to use green manure to improve soil fertility. He stated that the use of green manure is "pretty standard in the industry" because "[w]e have very low fertility up here" and because the use of green manure is cost effective and a "best management" practice. Dykhuis also testified that the extension service recommends that harvested crops that are no longer

---

2. Appellant also testified that between 20 and 25 deer forage on the farm regularly and cause between $5,000 and $7,000 in annual crop damage, and that until six or seven years earlier, the DNR had issued him permits to shoot as many as ten deer by any means to facilitate thinning of the herd. He also stated that he lost roughly 40% of the pumpkin harvest due to crop damage or rotting.

viable in the retail market be used for green manure.

Ann Bozich described the farm's harvest and vegetable selling operation; she testified that there was typically "a lot" of crop damage to the pumpkins caused by deer.

Finally, Charles Hansen testified that he and appellant had maintained green manure practices on the farm since 1987 and that from June through mid-December the farm experienced a constant problem with crop damage caused by foraging deer.

The district court found appellant guilty of deer baiting, noting "that the pumpkins were food, they were placed there by a person[,] and [appellant] was hunting in the vicinity or over it." Appellant was sentenced to a $385 fine that was stayed pending this appeal.

### ISSUE

Did the district court err by finding appellant guilty of baiting deer within the meaning of Minn.Stat. § 97B.328?

### ANALYSIS

■ Under the Minnesota and United States Constitutions, a person may not be deprived of liberty or property without due process of law. U.S. Const. amends. V, XIV, § 1; Minn. Const. art. I, § 7. "To comport with due process, criminal statutes must provide defendants with 'fair warning' by defining crimes clearly enough that an ordinary person can understand what conduct is prohibited." *State v. Ali,* 775 N.W.2d 914, 921 (Minn.App.2009) (quoting *State v. Reha,* 483 N.W.2d 688, 690–91 (Minn.1992)). "The key to the fair-warning requirement is that 'the statute, either standing alone or as construed, [must make] it reasonably clear at the relevant time that the defendant's conduct was criminal.'" *Id.* (quoting *United States v. Lanier,* 520 U.S. 259, 267, 117 S.Ct. 1219, 1225, 137 L.Ed.2d 432 (1997)).

■ Further, "[b]efore conduct hitherto innocent can be adjudged to have been criminal, the legislature must have defined the crime, and the act in question must *clearly* appear to be within the prohibitions or requirements of the statute[.]" *State v. Finch,* 37 Minn. 433, 435, 34 N.W. 904, 905 (1887) (emphasis added). This point of law has been more recently stated to require that when a penal statute is ambiguous, it must be "resolved in favor of the criminal defendant in the interest of lenity." *State v. Leathers,* 799 N.W.2d 606, 608 (Minn.2011); *State v. Holmes,* 778 N.W.2d 336, 339 (Minn.2010). However, when a criminal statute is ambiguous, the rule of lenity does not require "the narrowest possible interpretation to the statute." *State v. Carufel,* 783 N.W.2d 539, 542 (Minn.2010) (quotation omitted).

■ This court reviews questions of statutory interpretation de novo. *State v. Heiges,* 806 N.W.2d 1, 15 (Minn.2011); *State v. Peck,* 773 N.W.2d 768, 771 (Minn. 2009). "When interpreting a statute we must give the statute's words and phrases their plain and ordinary meaning." *Id.* at 772; *State v. Reese,* 692 N.W.2d 736, 743 (Minn.2005) (stating that reviewing court interprets a criminal statute "[b]ased on the plain language of the statute and our previous decisions interpreting the statute"). The rule of lenity does not apply if statutory language is clear and, under ordinary circumstances, if the "words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2010); *but see State v. Wukawitz,* 662 N.W.2d 517, 525 (Minn.2003) (stating that even when a statute has a plain meaning, an appellate court will further construe the statute if it "conclude[s] that the plain meaning leads to

absurd or unreasonable results that depart from the purpose of the statute").

No appellate court of this state has interpreted Minn.Stat. § 97B.328, or otherwise defined how this statute may limit a farmer's right to hunt deer on his own property when crops grown and transported on the property meet the definition of deer bait. Under these circumstances, this court must determine whether the statute clearly prohibits appellant's conduct.

The district court found appellant guilty because it interpreted the deer baiting statute to require both that the food was not "placed by a person" and that it did not "result[ ] from normal or accepted farming ... activities" in order for appellant's hunting conduct to be excused. Because appellant admittedly placed the pumpkins and other vegetables on his fallow field, he was found guilty even though he provided strong evidence that his placement of the pumpkins was the result of a normal and accepted farming practice that he had engaged in throughout the growing season.

Our threshold question is whether Minn. Stat. § 97B.328 is ambiguous. *State v. Vue*, 797 N.W.2d 5, 16–17 (Minn.2011). "A statute is ambiguous if its language is subject to more than one reasonable interpretation." *Peck*, 773 N.W.2d at 772. When the statute is read in full, several of the statute's words and phrases are unclear in their application to farmers hunting on their own property. As written, the statute prohibits a farmer from hunting "in the vicinity" of food capable of enticing deer when the food was "placed" by the farmer.

■ Neither "in the vicinity" nor "placed" is defined in the statute, however, and both are subject to a variety of reasonable interpretations. "Vicinity" describes a proximal relationship between two items, but it lacks specificity and is therefore ambiguous. *See The American Heritage Dictionary of the English Language* 1990 (3rd ed.1992) (defining "vicinity" as "[t]he state of being near in space or relationship; proximity"). "Vicinity" could mean within shooting range of a hunter, which is also a variable distance due to choice of weapon or skill of the hunter, or it could refer to the distance from which "placed" food would attract deer. In appellant's case, photos and trial testimony established that appellant's farm was teeming with pumpkins and other vegetables because appellant is a vegetable farmer— vegetables were located in the pile that was the source of appellant's citation, as well as in visible piles located near outbuildings and machinery, and in the form of vegetable pieces that had been partially tilled into the ground. The word "vicinity" is ambiguous as used in Minn.Stat. § 97B.328.

■ We next turn to the word "placed," which, although it has numerous dictionary definitions, can most closely be defined as "[t]o put in or as if in a particular place or position; set." *American Heritage Dictionary* at 1382. The definition of "placed" necessarily includes a volitional aspect that is inconsistent with a farmer's routine activities, which may inadvertently attract deer by "placement" of harvested or discarded crops. Conceivably, this restriction could apply to any movement of crops due to human volition, including harvesting corn with large machinery or moving pumpkins from the field where they were grown to another place on a farm for storage, further processing, or another farm-related purpose. Here, under the language of the statute, appellant was prohibited from hunting within the vicinity of *any* crops he had transported on his own land. The word "placed" is also ambigu-

ous within the factual context presented here.

 Further, as applied to farmers, by exempting from the statutory prohibition "[f]ood that has not been placed by a person and resulting from normal or accepted farming ... activities," the statute apparently gives with one hand and takes with the other. By including the "normal or accepted farming activities" language in the list of activities that do not meet the definition of deer bait, the legislature expressed an intention to make a statutory exception for farmers who transport their crops as part of carrying out their livelihoods. However, farmers meet the definition of deer baiting during harvest and at other times when they hunt within the "vicinity" of crops that constitute deer food that has been "placed" by them. Thus, the phrases "food ... placed by a person" and "food ... resulting from normal or accepted farming ... activities" are inconsistent with each other, and the juxtaposition of these two phrases creates an ambiguity in the statute.

 Because the statute is ambiguous, we turn to the canons of construction to discern the intent of the legislature. Minn.Stat. § 645.16. We may consider the occasion and necessity for the law, as well as "the mischief to be remedied." *Id.* Further, in ascertaining legislative intent, we presume that the legislature did not intend an absurd result. Minn.Stat. § 645.17(1) (2010). Here, to construe the deer baiting statute as urged by respondent would so restrict the right of a farmer who hunts on his own property that the farmer's right to hunt would not exist. This is an absurd result that the legislature certainly did not intend. With regard to farmers who hunt on their own property, the "mischief to be remedied" is to prohibit farmers from using bait to entice deer for hunting purposes. Until the stat-

ute can distinguish between innocent conduct related to farming and unlawful baiting of deer, the statute does not effectuate the intent of the legislature.

## DECISION

Because Minn.Stat. § 97B.328 is ambiguous as applied to appellant's factual scenario, we conclude that appellant's conviction violates due process. We therefore apply the rule of lenity and reverse appellant's conviction.

**Reversed.**