CHUTICH, Justice.
Appellant Edward John LaPenotiere, Jr., was charged with second-degree sale of a controlled substance for selling heroin and Vicodin in a "school zone." Under Minnesota Statutes section 152.01, subdivision 14a(2) (2016), a "school zone" includes "the area surrounding school property ... to a distance of 300 feet or one city block, whichever distance is greater, beyond the *353 school property." At trial, the State introduced a map and testimony demonstrating that the drug sale had occurred at LaPenotiere's home, which is located on a city block that is diagonal, or kitty-corner, to school property. The jury found LaPenotiere guilty as charged. LaPenotiere subsequently filed a petition for postconviction relief, arguing that the State had failed to prove that the sale occurred within 300 feet of school property. The postconviction court denied the petition, and the court of appeals affirmed. Because a "school zone" includes the entire area of a city block that is kitty-corner to school property, when the land surrounding school property is organized in a city-block system, we affirm.
FACTS
The State of Minnesota charged LaPenotiere in 2013 with second-degree sale of a controlled substance in a school zone. See Minn. Stat. § 152.022, subd. 1(6)(i) (2012) (defining a second-degree offense based on the sale of certain controlled substances "in a school zone"). Minnesota law defines "school zone," in pertinent part, as "(1) any property owned, leased, or controlled by a school district ... [and] (2) the area surrounding school property as described in clause (1) to a distance of 300 feet or one city block, whichever distance is greater, beyond the school property." Minn. Stat. § 152.01, subd. 14a (1)-(2) (2016).
At trial, the State presented evidence that LaPenotiere sold heroin and Vicodin out of his home and that LaPenotiere's home was within a school zone. The location of the Little Falls school property and LaPenotiere's home is depicted in Diagram 1 below.
*354 Diagram 1
LaPenotiere's home is located on the northeast corner of a rectangular city block; his block, in turn, is kitty-corner[1] from school property in the northwest direction.
The State offered evidence to establish the location of the school and the site of the sale. The State's evidence included an aerial satellite map, which was marked Exhibit 4, and testimony from a police deputy who identified Exhibit 4 as "a map of the Little Falls school area" and "a fair and accurate representation of where the school is and where the defendant's home is." Given the evidence showing that LaPenotiere's home was on a city block kitty-corner to the school property, the State did not present any evidence about whether the home was within 300 feet of the school property.
The jury found LaPenotiere guilty of selling a controlled substance in a school zone, and the court imposed a presumptive sentence.[2] LaPenotiere did not file a direct appeal.
*355 In 2016, LaPenotiere filed a timely petition for postconviction relief, claiming that the State had failed to prove that the drug sale occurred in a school zone. LaPenotiere argued that the evidence showing that his block was kitty-corner to school property was insufficient because the one-city-block method of proving the school-zone element applies only to blocks with a side facing the school property. According to LaPenotiere, this result is compelled by our decision in State v. Carufel , 783 N.W.2d 539 (Minn. 2010).
In Carufel , the issue before us was whether the drug sale had occurred within a "park zone," defined by statute to include "the area within 300 feet or one city block, whichever distance is greater, of the park boundary." 783 N.W.2d at 543 (quoting Minn. Stat. § 152.01, subd. 12a (2008) ). The drug sale occurred in the defendant's house, which was located on a block with a side facing a public park. Id . at 541.[3] In affirming the defendant's conviction, we held that "when the land surrounding a public park is an area divided into rectangular blocks bounded by city streets on all four sides, the phrase 'the area within ... one city block ... of the park boundary' " unambiguously includes "the entire area of a block that is directly adjacent to the park." Id. at 545. We acknowledged that the statutory phrase "one city block" could be read "to mean both a distance measurement from the park, and ... the entire area of that city block." Id. at 544 n.2. Because the defendant's house fell "both within the distance measurement of one city block and within the area measurement of a city block," our discussion of the distance-versus-area question was limited. Id. In a concurrence, Justice Paul Anderson discussed this distance-versus-area question, explaining that it might impact the issue of "whether a point located on [a kitty-corner block was] within the park zone." Id. at 549 (Anderson, Paul H., J., concurring).
LaPenotiere reads our analysis in Carufel as limiting the term "one city block," as used in the statutory definition of a park zone, to include blocks with a side facing the park boundary and to exclude kitty-corner blocks. According to LaPenotiere, the same limitation should be placed on the term "one city block" in the statutory definition of a school zone because the same term was at issue in Carufel . LaPenotiere therefore argued to the postconviction court that when a drug sale occurs on a block without a side facing the school property (e.g., a kitty-corner block), the State must prove that the sale occurred within 300 feet of the school property. Because the record did not contain any evidence that LaPenotiere's home was within 300 feet of the school property, he claimed that the State had presented insufficient evidence to support his conviction.
The postconviction court denied LaPenotiere's petition, explaining that LaPenotiere misread our holding in Carufel . According to the postconviction court, the phrase "directly adjacent" actually includes kitty-corner blocks, so the entire area of LaPenotiere's block is included in the school zone.
On appeal, LaPenotiere renewed these same arguments. The court of appeals affirmed. Lapenotiere v. State , 902 N.W.2d 464, 467 (Minn. App. 2017). Unlike the postconviction court, however, the court of appeals distinguished between kitty-corner blocks and blocks that are "directly adjacent"
*356 to school property.[4] Id. at 466-67. Ultimately, the court rejected LaPenotiere's argument, as depicted in the following diagram, that Carufel limited the zone created by the term "one city block" to the blocks "directly adjacent" to the school property, that is, having a side facing school property.
Id. at 466-67.[5] Carufel , the court noted, simply held that the blocks "directly adjacent" to the park boundary unambiguously fell within the zone created by the term "one city block." See id. And as a result, the issue presented in LaPenotiere's case-"whether a [home] located on a corner block that abuts school property is within one city block of the property"-remained unanswered. Id.
After acknowledging the distance-versus-area issue that was discussed in Carufel , the court did not resolve the measurement issue because LaPenotiere's "home [was] both within the one-block distance measurement from the school property and within the city block area measurement." Id. As part of its analysis, the court observed that the definition of a "school zone" incorporates a term that is not used in the "park zone" definition at issue in Carufel -namely, the word "surrounding," which means "[t]o extend on all sides of simultaneously; encircle." Id. (citation omitted) (internal quotation marks omitted). According to the court of appeals, the use of the word "surround" plainly reflects the Legislature's "intent to establish a drug-free perimeter extending at least one city block beyond school property in all directions." Id. Accordingly, the court held that LaPenotiere "sold controlled substances within one city block of a school property" and affirmed his conviction. Id.
We granted LaPenotiere's petition for review.
*357 ANALYSIS
I.
The question before us is whether the State introduced sufficient evidence to establish that the drug sale at LaPenotiere's home occurred in a "school zone." But this question is, at its core, a question of statutory interpretation: Does a "school zone," as defined by Minnesota Statutes section 152.01, subdivision 14a, include the entire area of a city block situated kitty-corner to school property? See State v. Henderson , 907 N.W.2d 623, 625 (Minn. 2018) ("When a sufficiency-of-the-evidence claim turns on the meaning of [a] statute ... we are presented with a question of statutory interpretation...."). We review questions of statutory interpretation de novo. Id.
The goal of all statutory interpretation is to "ascertain and effectuate" the Legislature's intent. Minn. Stat. § 645.16 (2016) ; Henderson , 907 N.W.2d at 625. "[W]hen the [L]egislature's intent is clearly discernable from plain and unambiguous language[,] statutory construction is neither necessary nor permitted, and we apply the statute's plain meaning." State v. Kelbel , 648 N.W.2d 690, 701 (Minn. 2002). Only if the statutory language is ambiguous, meaning it is "susceptible to more than one reasonable interpretation," may we "look to canons of construction to ascertain its meaning." Henderson , 907 N.W.2d at 625.
When determining whether a statute is ambiguous, we give words and phrases their ordinary meaning. State v. Prigge , 907 N.W.2d 635, 638 (Minn. 2018). In doing so, we may "look to the dictionary definitions of those words and apply them in the context of the statute." State v. Haywood , 886 N.W.2d 485, 488 (Minn. 2016). "[T]he relevant [dictionary] definition of a term depends on the context in which the term is used." State v. Nelson , 842 N.W.2d 433, 437 n.2 (Minn. 2014). We read statutes "as a whole so as to harmonize and give effect to all its parts." State v. Riggs , 865 N.W.2d 679, 683 (Minn. 2015) (citation omitted) (internal quotation marks omitted); see Prigge , 907 N.W.2d at 640 ("The whole-statute canon ... does not require ambiguity before it may be applied."). In other words, we do not view the statute's words and provisions in isolation, State v. Gaiovnik , 794 N.W.2d 643, 647 (Minn. 2011), but instead interpret the statute as a whole, so that nothing is superfluous, State v. Boecker , 893 N.W.2d 348, 351 (Minn. 2017). See also Minn. Stat. § 645.16 ("Every law shall be construed, if possible, to give effect to all its provisions.").
With these principles in mind, we examine the language of Minnesota Statutes section 152.01, subdivision 14a. It provides, in relevant part:
"School zone" means:
(1) any property owned, leased, or controlled by a school district or an organization operating a nonpublic school ... [and]
(2) the area surrounding school property as described in clause (1) to a distance of 300 feet or one city block, whichever distance is greater, beyond the school property....
(Emphasis added.)
The parties dispute how the school zone is created when the area surrounding school property is organized in a city-block system[6] and the one-city-block method of measurement is used. According to the *358 State, the language of the statute creates a zone that includes all "first-ring" city blocks.[7] By contrast, LaPenotiere argues that the language of the statute creates a zone that includes (1) the entire area of directly adjacent blocks and (2) the quarter-circle area of the kitty-corner blocks that is created using a radius of 300 feet from the school property. Put another way, LaPenotiere asserts that the measurement of one city block does not apply at all to kitty-corner blocks; for kitty-corner blocks, he contends that the only available method of proof for the school-zone element is the 300-foot measurement of distance.[8]
For the reasons that follow, we conclude that when the area surrounding school property is organized in a city-block system, the term "one city block" in section 152.01, subdivision 14a(2), refers to an area, not a distance, and therefore the statute creates a zone that includes the entirety of "first-ring" city blocks.
Statutory "words and phrases are construed ... according to their common and approved usage." Minn. Stat. § 645.08(1) (2016). Here, the phrase "one city block" is commonly understood to have two meanings-one referring to distance and the other referring to area. First, the word "block" can refer to "the distance along one of the sides" of "a usually rectangular space" enclosed by city streets. Webster's Third New International Dictionary 235 (2002); see also The American Heritage Dictionary of the English Language 197 (5th ed. 2011) (defining a "block" as "[a] segment of a street bounded by consecutive cross streets" (emphasis added) ). This first meaning focuses on distance and is reflected in statements such as "I walked 10 blocks to school" or "the lake is 5 blocks from here."
Second, the word "block" can alternatively refer to "a usually rectangular section of a city or town bounded on each side by consecutive streets." The American Heritage Dictionary of the English Language 197 (5th ed. 2011) (emphasis added); see also Webster's Third New International Dictionary 235 (2002) (defining a "block" as "a portion of land," as in either "a usually rectangular space ... enclosed usually by streets but sometimes by other bounds" (emphasis added) ). This second meaning focuses on area and is reflected in statements like "he ran around the block" and "she lives on my block." We recognized this ambiguity in Carufel , when we read "the statutory phrase 'one city block' to mean both a distance measurement from the park, and to encompass the entire area of that city block."[9] 783 N.W.2d at 544 n.2 (emphasis added).
*359 Because a "block" can reasonably mean either the length of a city block (distance or segment) or the area of such a block (section or space), we conclude that the term "one city block" is ambiguous as applied to LaPenotiere's home.[10] See Sorchaga v. Ride Auto, LLC , 909 N.W.2d 550, 555 (Minn. 2018) ("The words of a statute are ambiguous only if, as applied to the facts of the particular case, they are susceptible to more than one reasonable interpretation." (citation omitted) (internal quotation marks omitted) ). We therefore turn to the canons of statutory construction to resolve the ambiguity. See Henderson , 907 N.W.2d at 625. When a statute is ambiguous, the intent of the Legislature may be ascertained by considering, among other factors, "the mischief to be remedied" and "the object to be attained." Minn. Stat. § 645.16(3) - (4).
In 1989, the Legislature enacted Minnesota Statutes section 152.01, subdivision 14a, defining a "school zone," as part of a broader scheme to increase the penalties for drug crimes that occurred near parks and schools. See Act of June 1, 1989, ch. 290, art. 3, 1989 Minn. Laws 1580, 1595-1612. Fifteen years later, in State v. Benniefield , we explained that:
[T]here is a rational connection between the goal of protecting children from drugs and deterring the possession of drugs in a school zone . There is a genuine risk that those involved in illegal drug use, whether selling or merely possessing a controlled substance, could bring the dangers associated with illegal drugs into school zones. For example, abandoned drugs or discarded drug paraphernalia might be found in or around areas of drug use.
678 N.W.2d 42, 47 (Minn. 2004) (emphasis added). More recently, we observed that the purpose of the "park zone" statute, which was enacted at the same time as the "school zone" statute, was to protect "children from the dangers associated with illegal drug use by creating a buffer zone around parks." Carufel , 783 N.W.2d at 545 ; see also Act of June 1, 1989, ch. 290, art. 3, 1989 Minn. Laws 1580, 1595-1612.
Given the mischief to be remedied and the object to be attained by section 152.01, subdivision 14a(2), we conclude that the only reasonable interpretation of the term "one city block" is an area measurement that creates a buffer zone that includes the entirety of all "first-ring" city blocks. Such an interpretation creates a clear and obvious buffer zone around school property in all directions, which helps achieve the Legislature's goal of protecting children from the dangers associated with illegal drugs. Moreover, the notion of "one city block" as an area is practical; prosecutors and defendants alike need not pull out a measuring tape to determine if a particular location is within "one city block" of school property.
By contrast, an interpretation that uses a distance measurement is unreasonable because it limits the school zone to less than, or possibly more than,[11] the entire kitty-corner block, creating a quarter-circle area that radiates from the corner of the block that abuts the school property.
*360 Applying the distance-based approach, the boundary of the school zone would be an arc that could cut through some of the houses on the block, creating a zone that may cover only one portion of a house while leaving other portions outside the zone. Additionally, interpreting "one city block" as a distance, not an area, presents the issue of which side of a rectangular block (the length or the width) is the "distance of ... one city block," an ambiguity that arises under LaPenotiere's preferred interpretation.[12] Minn. Stat. § 152.01, subd. 14a(2). Under this approach, the buffer zone would be anything but clear and obvious, and the goal of protecting children would be frustrated.[13]
Finally, our conclusion is consistent with the words that the Legislature employed to define the "school zone," which reflect the Legislature's intent to protect children by creating a broad buffer zone. The words that the Legislature chose to use in section 152.01, subdivision 14a, evince its intent to create as expansive a zone as possible. For example, the statute uses the phrase "whichever distance is greater ." Minn. Stat. § 152.01, subd. 14a(2) (emphasis added). Moreover, the words "surrounding" and "beyond" are broad words that evoke an image of an expansive area. See The American Heritage Dictionary of the English Language 175, 1754 (5th ed. 2011) (defining "beyond" as a preposition meaning "[o]n the far side of; past" and "surrounding" as a transitive verb meaning "[t]o extend on all sides of simultaneously; encircle"). The statute even states that a school zone includes "the area within a school bus," which demonstrates that the Legislature conceived of a far-ranging, mobile school zone that extends well beyond school grounds. Minn. Stat. § 152.01, subd. 14a(3).
In sum, when the area surrounding school property is organized in a city-block system, the "school zone," as defined by Minnesota Statutes section 152.01, subdivision 14a(2), includes the entire area of a city block that is kitty-corner to the school property.[14]
II.
Having decided that a city block located kitty-corner to school property is included in the school zone when the area surrounding school property is organized in a city-block system, as is the case here, we turn to the question of whether the evidence was sufficient to support LaPenotiere's conviction. "[W]e conduct a painstaking review of the record to determine whether the evidence and reasonable inferences drawn therefrom, viewed in a light most favorable to the verdict, were sufficient to allow the jury to reach its verdict."
*361 Loving v. State , 891 N.W.2d 638, 643 (Minn. 2017) (citation omitted) (internal quotation marks omitted). We "extend a broad review" of questions of fact when reviewing the sufficiency of the evidence, Butala v. State , 664 N.W.2d 333, 338 (Minn. 2003) (citation omitted) (internal quotation marks omitted), and leave "[t]he weight and credibility of the testimony" in the province of the jury, State v. Moore , 438 N.W.2d 101, 108 (Minn. 1989).
Although the State did not introduce testimony about precisely how far away LaPenotiere's home was from the school property, the evidence introduced was sufficient for the jury to conclude that the drug sale occurred within a first-ring city block that was kitty-corner to school property. Specifically, the State introduced an aerial map as an exhibit showing LaPenotiere's home on a block plainly situated kitty-corner to the Little Falls school property. The State also elicited testimony from a police deputy, who explained this map to the jury and testified that LaPenotiere's home was "within one block of the school property." Viewed through a lens most favorable to the conviction, we conclude that the evidence was sufficient to prove the school-zone element of second-degree sale of a controlled substance in a school zone.
CONCLUSION
Based on the foregoing analysis, we affirm the decision of the court of appeals.
Affirmed.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.
CONCURRENCE

We use the colloquial term "kitty-corner" to mean a city block that is located "diagonal" to the school property. The American Heritage Dictionary of the English Language 293, 971 (5th ed. 2011) (defining "kitty-corner," a variant of "cater-cornered").

The jury also found LaPenotiere guilty of third-degree sale of a controlled substance, Minn. Stat. § 152.023, subd. 1(1) (2016). This lesser-included offense is not at issue on appeal.

A diagram showing the location of the defendant's home relative to the park can be found at Carufel , 783 N.W.2d at 549 (Anderson, Paul H., J., concurring).

We agree with the court of appeals' implicit conclusion that kitty-corner blocks are not "directly adjacent" to school property; rather, they "abut" the school's border at a corner or intersection. See Lapenotiere , 902 N.W.2d at 467 (describing LaPenotiere's block as "located on a corner block that abuts school property"); see also The American Heritage Dictionary of the English Language 8 (5th ed. 2011) (defining the transitive verb "abut" as "[t]o border upon or ... be next to").

The issues that arise when one tries to apply a distance measurement to a kitty-corner block are not fully reflected in the court of appeals' checkerboard diagram. As the facts of this case illustrate (see Diagram 1), city blocks are rarely neat rows of perfect squares. Instead, they may be rectangular (creating a short and long side of each block, rather than a uniform length of one city block), they may vary in size, and they may be bounded by streets that intersect at non-right angles.

We use the phrase "city-block system" to describe a system that divides land into areas that are usually rectangular and bounded on each side by consecutive streets. A city-block system is often, but not always, characterized by intersections at right angles.

The State appears to use the word "first-ring" to encompass both kitty-corner blocks and directly-adjacent blocks-i.e., all city blocks that abut school property, whether at a corner or along the edge of the block. We use "first-ring" in this same sense.

As part of his argument, LaPenotiere contends that in Carufel , we "cabined the applicability of the 'one city block' measurement to blocks 'directly adjacent to the park.' " We disagree. In Carufel , we simply held that the blocks "directly adjacent" to the park boundary unambiguously fell within the zone created by the term "one city block." 783 N.W.2d at 545. In the alternative, LaPenotiere argues that the phrase "the area surrounding" limits the term "one city block" to blocks "directly adjacent" to the school because the word "surround" is commonly understood to mean "to enclose on all sides." This argument is unavailing because the kitty-corner blocks, taken together with the "directly adjacent" blocks, form an area surrounding school property.

LaPenotiere argues that it is unreasonable to read the phrase "one city block" as an area measurement because it would read the phrase "to a distance of" out of the statute. But as we observed in Carufel , reading the phrase "one city block" as strictly a distance measurement would read the word "area" out of the statute. 783 N.W.2d at 544 n.2.

The concurrence concludes that "there is only one reasonable interpretation" of the phrase "one city block" because we "already decided" in Carufel that "one city block" includes the entire area of the block. See 783 N.W.2d at 545. But the concurrence ignores language in the Carufel opinion plainly stating that a "block" is both an area and a distance. See 783 N.W.2d at 544 n.2 ("We read the statutory phrase 'one city block' to mean both a distance measurement from the park ... and to encompass the entire area of that city block." (emphasis added) ).

The school zone would extend more than a city block when all linear segments of the block were less than 300 feet.

At oral argument, LaPenotiere argued that the hypotenuse or diagonal distance across a rectangular city block could also be the "distance ... of one city block." We reject that interpretation, as well, because we conclude that "one city block" is an area, not a distance.

Because the ambiguity in the term "one city block" is easily resolved after consulting traditional canons of construction, we need not consider the rule of lenity, as LaPenotiere urges. State v. Thonesavanh , 904 N.W.2d 432, 440 (Minn. 2017) ("[T]he overwhelming weight of authority is that the rule of lenity is a canon of last resort, applicable only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute." (citation omitted) (internal quotation marks omitted) ).

Our interpretation does not make the 300-feet measurement superfluous. The 300-feet method of measurement still serves as a floor, creating a minimum distance of 300-feet for a school zone, such as when city blocks are shorter than 300 feet in length or width. The 300-feet method would also apply in neighborhoods where there is no grid-like system of blocks surrounding school property.